[Civ. No. 23741. Fourth Dist., Div. Two. June 10, 1981.]

MONTESSORI SCHOOLHOUSE OF ORANGE COUNTY, INC., et al., Plaintiffs and Appellants, v.
DEPARTMENT OF SOCIAL SERVICES, Defendant and Respondent.

COUNSEL

Martin F. Roston for Plaintiffs and Appellants.

George Deukmejian, Attorney General, Thomas E. Warriner, Assistant Attorney General, Anne S. Pressman and G. R. Overton, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**MORRIS, J.**—Petitioners-appellants, Montessori Schoolhouse of Orange County, Montessori Schoolhouse of Fountain Valley and Roston Montessori Schoolhouse of Mission Viejo (hereafter Montessori Schools), appeal from an order of the superior court denying their petition for a writ of mandate wherein they sought a determination that respondent, California Department of Social Services (hereafter the Department) and its predecessor, the State Department of Health, were without authority to license appellants' facilities as community care facilities.

The administrative proceedings underlying this appeal were commenced by service of accusations to revoke the licenses of the Montessori Schools. The matters were consolidated for hearing by the administrative agency hearing officer. Decisions on each of the matters became effective upon order of the Department of Social Services on November 6, 1978. Appellants filed a petition in the superior court for administrative mandamus pursuant to Code of Civil Procedure section 1094.5. Following its review of the administrative record, the court denied the writ. This appeal followed.

Appellants, Montessori Schools do not challenge the discipline imposed nor the factual findings adopted by the Department. In fact, all schools are presently licensed by respondent.

The sole issue presented in proceedings in the trial court and on this appeal is whether respondent has jurisdiction to license petitioners' schools as day care facilities.

The Department is charged with the responsibility for licensing community care facilities. (Health & Saf. Code, § 1500 et seq.)[1]

The term "community care facility" is defined as, "any facility, place, or building which is maintained and operated to provide nonmedical residential care, day care, or homefinding agency services for children, adults, or children and adults, including, but not limited to, the physically handicapped, mentally impaired, or incompetent persons." (§ 1502, subd. (a).)

Among the facilities included within the term "community care facilities" are "day care centers," which are defined as, "any facility which provides nonmedical care to persons in need of personal services, supervision, or assistance essential for sustaining the activities of daily living or for the protection of the individual on less than a 24-hour basis." (§ 1502, subd. (a)(3).)

In licensing community care facilities, the Department is required to give special consideration to the special nature, history, and purposes of day care facilities for children. (§ 1527.) For purposes of the licensing provisions, section 1527 provides that "'day care facilities for children' means those facilities which provide nonmedical care to infants and preschool and school-age children under 18 years of age during a portion of the day and includes infant centers, preschools, family day care homes, and day care centers."

The Department has taken the position that the Montessori Schools are operating facilities which provide care for children who are both above and below school age, before, during and after the regularly scheduled private training program which the schools provide.

 Although appellants have not challenged the factual findings, we are satisfied that there is substantial evidence supporting the finding

---

[1]All statutory references are to the Health and Safety Code except as otherwise stated.

that appellants do provide personal services, supervision, assistance and protection to children in the age group two years through five years, within the meaning of sections 1502, subdivision (a)(3) and 1527.[2]

---

[2]Mrs. Roston testified concerning the type of care and supervision given, as follows:

"Q. (By Mr. Overton): In the classroom, Mrs. Roston, let's observe one of your teachers that has been trained at your institute in any one of your facilities; *what is the teacher's primary responsibility when she's in the classroom between 9 a.m. and 12 for the first break for lunch with the age group two through five?*

"A. (By Mrs. Roston): *Her function can be parallel to that of a cook or of a host that has invited someone to dinner. She has the environment ready. In other words, the cook has prepared this food for a group, so what she does is she looks at the environment. Is there, in all its different activities, the smorgasbord ready for the child to use?*

"*Then she facilitates the environment and the programming of the day so the child is then free to sit down and eat. She doesn't do the eating for him. She takes him on the next step.*

"She watches where she can serve him, and, like someone who would serve a guest their coffee or their dessert or watch when they're ready for the next step; this is the function of a teacher in a Montessori environment.

"Q. Now, have you observed your teachers in their classrooms?

"A. From time to time I have, sir.

"Q. Have you ever observed any children in your classroom getting into disputes with each other?

"A. Yes, sir.

"Q. In the two to five year age group?

"A. Yes, sir.

"Q. Does the teacher intercede in those disputes sometimes?

"A. Could you describe it more specifically?

"Q. *For example, children are arguing over an object because one wants to use it and the other one is using it, does that ever happen?*

"A. *Yes.*

"Q. *Does the teacher intercede in that sort of an argument?*

"A. *The teacher even before the dispute—in that particular case, the precedent or standard we have is that a person is free to take a particular activity.* The person taking an activity has a right to use it. *No one has a right to grab it from him.* No one has to pressure him to put him back just because somebody else wants to use it. *If a teacher sees another child's rights being violated, she protects the right of the first child.*

"Q. She is protecting the right of the children as the rules have been given to the children at the facility?

"A. Yes.

"Q. *If a child has an object fall down on him and is in pain, does the teacher comfort that child?*

"A. Definitely so; why not?

"Q. *Does the teacher give first aid or inspect the child to see if there are any further injuries?*

"A. Yes. *Usually on a shelf she has some first aid available. And sometimes— definitely, why not?*

"Q. If a child becomes ill in class, does the teacher have a responsibility to notify the administrator of the school?

"A. Yes, sir.

"Q. Do they do so?

"A. I hope they do, sir.

"Q. Mrs. Roston—

Appellants contend that their facilities are "schools" and that "schools" and community care facilities are mutually exclusive, so that

"A. —and the administrator has a responsibility to call the parent or isolate the child, in other words, give the child adequate attention if it's sick. Sometimes they start throwing up in the middle of the day or they have a temperature. It's their duty to see to all of these things.

"Q. *Do the teachers or aides supervise the giving of the food or nourishment?*

"A. *Every time there is the giving of food or nourishment or any activity in life, if it's from coming in and saying, 'good morning,' hanging up your clothes, going to the bathroom, washing your hands, anything, we use every opportunity to satisfy educationally what we call educational experience.*

"In other words, if a child is there—this is the difference between us and day care, for example; if we have just cookies, we encourage or show the children how to pour the juice and how to serve cookies, rather than us doing it for them. We give them an opportunity to have social interchange and growth.

"Q. Let's concentrate on that: the giving of juice as contrasted—

"A. We supervise that.

"Q. —as contrasted in a nursery school and what you do? You indicated you would let the children go through the doing of it for themselves as much as they could; right?

"A. No. Our ultimate goal is they handle it totally themselves. It doesn't mean we have a hands off policy and we let a little tot of two years old spill the juice all over. That wouldn't be my characterization of it.

"Our aim is to make the child self-sufficient in every aspect, and we have to be sensitive when there are opportunities that arise for us like this—that we allow the children to take as much on to themselves as they can proudly do.

"Q. Your aim is self-sufficiency for the child by doing; is that an accurate description—as much as they can do?

"A. That's an oversimplification, but for purposes, it would serve.

"Q. You indicated—

"A. Doing what?

"Q. Doing the act of getting juice and cookies.

"A. Can I give you an example?

"Q. Would you elaborate on that?

"A. We may have an activity in an environment which is pouring water, two glasses of water, one from another. Now, when we break—what makes it educational? You know, when we show the child, when we break down our movement, we actually count our movements as to what we do. We show the child how to manipulate each hand, how to hold one glass exactly over the center of another, the point of interest being not to spill a drop, so when a child repeats a certain act, and it does, achieving a certain sensory goal. He can reach. He refines his movement. By refining his movement he refines his preception. By refining his perception he refines the way he sees the world and his intelligence.

"That same act can be totally abused by a well-meaning parent that says, 'Do you like to pour water; go ahead and slop it over.' It is the same activity but it's not educational. There is a lot of difference.

"Q. I think the dispute—well, wouldn't a child that slopped all over from your example—I mean without—

"He would have learned how not to do it; is that not correct?

"A. I'm really—

"Q. He would have learned how to pour water?

"A. If his intention is to pour with as much care as he can and he slops, that is perfectly fine. If he does it without the same goal in mind, if he doesn't get our goal—

"Q. Isn't that the difference in educational philosophies, Mrs. Roston?

"A. No, sir . . . ." (Italics added.)

if a facility is a school it is not required to be licensed, even though it also provides the kind of care specified in sections 1502, subdivision (a)(3) and 1527.

Respondent contends that whether a facility is or is not a "school" is not determinative of the issue of whether the facility is subject to the licensing requirements of Health and Safety Code section 1500 et seq. Respondent argues that even though appellants may operate "schools," they are nevertheless required to be licensed because they provide section 1502 services to children before, after and during the hours the facilities offer their school program.

It seems rather obvious that any school receiving very young children will necessarily provide some degree of personal care, protection and supervision. The extent of such care and its quantitative relationship to the training provided by the school will depend on the age, intelligence and previous life experience of each child. It should be equally obvious that any "day care center" will provide some training along with the personal care, protection and supervision. The quality of that training may be good, bad or mediocre, depending, in the case of very young children, upon the character, intelligence and patience of the adults doing the supervision.

Therefore, the issue presented by this appeal cannot be resolved simply by examining the curriculum offered by appellants. Rather, it is necessary to examine the legislative intent to determine whether the licensing provisions were intended to exempt facilities qualifying as schools, even though they also perform the functions of a "day care facility."

### Categorical Exemptions

The provisions of Health and Safety Code section 1501 reflect a legislative determination that there is an urgent need for a coordinated and comprehensive statewide service system of quality community care for the mentally ill, developmentally and physically disabled, and children and adults who require care and services. The section further declares that it is the legislative intent to develop policies and programs designed, inter alia, to "insure that facilities providing community care are adequate, safe and sanitary."

The provisions of Health and Safety Code section 1500 et seq. are remedial in purpose. The law seeks to protect persons who cannot protect themselves from unscrupulous and negligent providers of services where such providers are not otherwise subject to regulation.

An examination of the character of facilities that are exempt from the licensing provision of the act serves to highlight this legislative purpose.

Section 1505 provides exemptions as follows:[3] (1) health facilities (licensed under § 1250 et seq.); (2) clinics (licensed under § 1200 et seq.); (3) neighborhood family day care homes accredited by a school district pursuant to Education Code section 8245;[4] (4) juvenile placement facilities approved by the California Youth Authority or any juvenile hall operated by a county; (5) any place where a juvenile is judicially placed pursuant to Welfare and Institutions Code section 362, subdivision (a); (6) facilities conducted by recognized religious denominations practicing spiritual healing;[5] (7) school dormitories or similar facilities as determined by the department; (8) housing or hotel facilities providing room and board or room or board in which no resident requires "any element of care"; (9) recovery houses for persons recovering from alcoholism or drug addiction if no care or supervision is required; (10) cooperative arrangements between parents for care of their children where no payment for care is required; (11) arrangements for occasion-

---

[3]Although the text of section 1505 will change effective January 1, 1983, there is no change affecting schools. (Stats. 1980, ch. 676, § 157.5, No. 6 West's Cal. Legis. Service, p. 2017, No. 4 Deering's Adv. Legis. Service, p. 58.)

[4]The "neighborhood family day care home" exemption may be surplusage, because Education Code section 8245 has been repealed. (Stats. 1980, ch. 798, § 2.5, p. 2467.) When section 1505 was first enacted in 1973 (Stats. 1973, ch. 1203, § 4, p. 2582), it exempted those neighborhood family day care homes accredited pursuant to Education Code section 16725. Section 16725 was enacted in 1972 (Stats. 1972, ch. 670, § 5, p. 1239) and repealed in 1977 (Stats. 1977, ch. 36, § 913, p. 397) when the Education Code was reorganized, at which time the substance of section 16725 was enacted in Education Code section 8245 (Stats. 1976, ch. 1010, § 2, p. 2558). Section 1505, however, continued to refer to former Education Code section 16725 until the 1980 Legislature changed the reference to its successor, Education Code section 8245. (Stats. 1980, ch. 676, § 157, p. 1942.) But, the very same session of the Legislature that made this updating amendment to section 1505 then repealed Education Code section 8245. No explanation for this paradox will be attempted since appellants do not claim exemption under this section.

[5]Existing law also provides exemption for certain residential facilities operated by religious groups for persons age 16 to 19. This exemption is deleted from section 1505 effective January 1, 1983.

al care by relatives or friends where no financial profit is involved. Finally, an exemption is provided for facilities similar to the facilities specifically exempt.

Generally, there are three categories of facilities that are exempt or may be exempt from the licensing provisions of the act, namely: (1) facilities that are subject to licensing or regulation under some other provision of law or are subject to judicial supervision; (2) facilities providing no care or supervision; (3) facilities providing care pursuant to a family relationship or cooperative arrangement and without financial profit.

"Schools" are not the subject of a categorical exemption.[6] Therefore, if schools are to qualify for exemption from the licensing provisions of the act, it must be because they are similar to the exempt facilities in relation to the remedial purposes of the act. ■ It is a well established rule of statutory construction that a "'remedial statute must be liberally construed, so as to effectuate its object and purpose. Although due regard will be given the language used, such an act will be construed, when its meaning is doubtful, so as to suppress the mischief at which it is directed, and to advance or extend the remedy provided, and bring within the scope of the law every case which comes clearly within its spirit and policy.'" (*Lande* v. *Jurisich* (1943) 59 Cal.App.2d 613, 616-617 [139 P.2d 657].)

■ Applying this principle to the construction of the Community Care Facilities Act compels us to the conclusion that the Legislature did not intend to exclude facilities providing nonmedical care and supervision to preschool and school-age children simply on the ground that the care and supervision is provided in the educational atmosphere of a school.

### Legislative History

Section 1527 provides as follows: "In licensing community care facilities, the state department shall give special consideration to the special nature, history, and purposes of day care facilities for children. Regulations adopted for day care facilities for children pursuant to Sections

---

[6]Appellants' contention that the exemption of "[a]ny school dormitory or similar facility determined by the department" provides an exemption for schools is without merit. If the words are given their ordinary meaning, a school is not similar to a school dormitory. Moreover, the department has not determined that a school is a similar facility.

1530, 1531, and 1562 shall substantially conform to the scope of regulations governing such day care facilities which were effective prior to the enactment of Chapter 1203 of the Statutes of 1973. [¶] For purposes of this article, 'day care facilities for children' means those facilities which provide nonmedical care to infants and preschool and school-age children under 18 years of age during a portion of the day and includes infant centers, preschools, family day care homes, and day care centers."

Prior to the enactment of chapter 1203 of the Statutes of 1973, the laws governing day care facilities for children were found in Welfare and Institutions Code section 16000 et seq.[7] (Stats. 1965, ch. 1784, § 5, p. 4074, amended by Stats. 1971, ch. 1593, § 574, p. 3414.) Section 16000 et seq. were in turn derived from Welfare and Institutions Code section 1620 et seq. (Stats. 1937, ch. 369, § 1620, p. 1076, amended by Stats. 1947, ch. 1363, § 1, p. 2913; Stats. 1949, ch. 445, § 1, p. 790.)

Section 16000 of the Welfare and Institutions Code provided in pertinent part as follows: "No person, association, or corporation shall, without first having obtained a written license or permit therefor from the department or from an inspection service approved or accredited by the department: [¶] (a) Maintain or conduct any institution, boarding home, day nursery, or other place for the reception or care of children under 16 years of age, nor engage in the business of receiving or caring for such children, nor receive nor care for any such child in the absence of its parents or guardian, either with or without compensation."

Although the parties have not cited any specific regulations governing day care facilities which were in effect prior to chapter 1203 of the Statutes of 1973, there are a number of opinions of the California Attorney General which are instructive as to the administrative interpretations of the former statutes. In fact, appellants cite a 1942 opinion of the Attorney General (NS4674) in support of their contention that schools are exempt from the licensing provisions of the Community Care Facilities Act.

The opinion was issued in response to a letter from the Director of the State Department of Social Welfare, the agency responsible for licensing under former Welfare and Institutions Code section 1620.[8]

---

[7]Former Health and Safety Code section 1500 et seq. provided for the licensing of facilities for handicapped persons. (Stats. 1947, ch. 1462, § 2, p. 3037.)

[8]Section 1620 provided in pertinent part as follows: "No person, association, or corporation shall, without first having obtained a written license or permit therefor from

In the letter requesting an Attorney General opinion, the director stated that the department had not considered places operated as approved schools as under its jurisdiction to inspect or license. The letter further stated that there were in the state agencies calling themselves nursery schools, play schools and day nurseries, some of which were caring for children from 3 to 12 hours a day, while others were operating on a 24-hour basis. As quoted in the Attorney General opinion, the activities of the institutions were described by the director as follows: "'Some agencies employ teachers and provide an educational program for the children, some are attempting to offer an educational program but teachers are not employed while other agencies are offering only custodial care. In some agencies the children are given the noon meal with mid-morning and mid-afternoon lunch while in other agencies breakfast and/or dinner is also provided. Some agencies, philanthropic in nature, offer care to children of families in the low-income groups and may make some charge for services rendered but do not expect to make a profit. Others charge a flat rate per child irrespective of family income and expect the operating expenses of the agency to be fully or partially covered by the parents' payments while still other agencies operate as commercial enterprises with the expectation of making a profit. Some agencies provide medical care for the children while in other agencies, medical care is provided by the parents.'"

Responding to the director's request for guidance, the opinion stated in pertinent part as follows: "It is clear that the use or non-use of the word 'school' in the name of the institution is of little significance, but rather the character of the service offered and performed should be regarded as controlling. The sections of the Welfare and Institutions Code are not clear and decisive as to the type of places intended to be covered. It is therefore difficult, in absence of clarification by the legislature, to be precise in describing places required to be licensed. [¶] The institutions as described in subdivision (a) of Section 1620 could be considered to include all places from full-time boarding institutions for children that offer no educational facilities to schools that, as an incident to their school work, care for children while they are attending

the State Department of Social Welfare or from an inspection service approved or accredited by the department: [¶] (a) Maintain or conduct any institution, boarding home, day nursery, or other place for the reception or care of children under 16 years of age, nor engage in the business of receiving or caring for such children, nor receive nor care for any such child in the absence of its parents or guardian, either with or without compensation."

school. [¶] It is significant, however, that schools are not mentioned in the sections. Moreover, the description is that of 'any institution, boarding home, day nursery, or other place for the reception or care of children'. The purpose, therefore, appears to be to require inspection and licensing of places operated for the purpose of caring for children such as boarding homes, day nurseries and the like. It is our view that if the main purpose or function of the agency is the care of children, the fact that some educational program is furnished will not remove it from the operation of the section. In our opinion, whether or not a particular institution is subject to the Act depends upon whether its primary purpose is the care of children. The fact that incidentally some educational facilities are furnished would not take it out of the scope of the sections of the Welfare and Institutions Code. On the other hand, where the institution is primarily operated as a school or for educational purposes, then in our opinion the fact that as a necessary incident thereto the children are cared for or fed would not cause it to become an institution for the care of children within the meaning of the sections. Necessarily, in our opinion, each institution will have to be examined to determine its true character."

Although the opinions of the Attorney General are not controlling as to the meaning of a statute, they are entitled to great weight. (*Smith* v. *Municipal Court* (1959) 167 Cal.App.2d 534, 539 [334 P.2d 931].) Moreover, appellants argue, since the Legislature in amending the law has not added the word "school" to the act, the Legislature has inferentially approved the Attorney General's analysis, and did not intend that institutions primarily operated as schools or for educational purposes should be subject to the licensing provisions of the act.

This argument is based on two erroneous assumptions, to wit: (1) that the opinion meant that any particular institution must necessarily be classified either as a school, or as an institution to be licensed under the act, and (2) that if any school is subject to the licensing requirement, all schools should be. The interpretation of the opinion to mean that schools and child care facilities were mutually exclusive was expressly rejected by the Attorney General in a later opinion. In 1944, the Superintendent of Public Instruction asked several questions relating to the views expressed in the earlier opinion NS4674. The Attorney General's response is contained in 3 Ops.Cal.Atty.Gen. 191, 192-193, and reads in pertinent part as follows:

"Your questions now presented seem to indicate that you interpret our opinion to mean that any particular institution must necessarily be classified either as a school or as an institution to be licensed under the Welfare and Institutions Code. No such thought was expressed or intended in our opinion.

"Each institution will have to be examined to determine its true character, not that it must be placed in one category or the other, but rather the Department of Social Welfare will examine it to determine if it is an institution within the meaning of the Welfare and Institutions Code, and the school department will make its examination to determine if the instruction given meets the requirements of the School Code.

"An organization could be both a school and an institution requiring a license under the Welfare and Institutions Code, and there are probably many such.

"Answering your questions in the order presented:

"1. 'What agency is responsible in the first instance for determining whether the primary purpose of a particular private institution for children is the care of children and therefore an institution coming within Welfare and Institutions Code sections 1620-1630 or is the education of children and therefore a private school within the meaning of Education Code sections 16257, 16625 and other provisions of said Code and other laws relating to private schools and pupils of private schools?'

"It cannot be said that there is any responsibility for determining the nature of an institution or school in the first instance. Both the School Department and the Department of Social Welfare have equal responsibility for examining and determining the nature of places where children under sixteen years of age are kept and educated or kept or educated and each department must perform the duties imposed upon it by law, independently of the other.

"2. 'What criteria may be reasonably used in determining whether a private institution for children is primarily one for the care of children or is a private school?'

"While our Opinion NS4674 speaks of an institution primarily operated as a school, we did not intend to convey the thought that an

institution primarily a school might not also be an institution within the provisions of the Welfare and Institutions Code. If any given institution gives some children within its jurisdiction board and lodging and proper educational instruction as a school, that institution would be as to those children a school. If, however, it cared for other children as to whom they did not render complete or proper educational facilities, but rather cared for them as an institution within the meaning of the Welfare and Institutions Code, then the organization would also have to be inspected and licensed by the Department of Social Welfare.

"3. 'May a private institution be both one primarily for the care of children and a private school so that it may avoid coming within Welfare and Institutions Code sections 1620-1630 and at the some [*sic*] time afford an opportunity for children to avoid attendance upon the public schools?'

"The answer to this question is contained in the foregoing discussion. Such an institution would have to comply with the provisions of both the Education Code and the Welfare and Institutions Code: . . ."[9]

The second erroneous assumption underlying appellants' argument is that if any "school" is subject to the licensing requirement, all schools should be. This error again demonstrates a basic misunderstanding of the Attorney General's analysis. Under that analysis a school is not exempt from the licensing requirements of the act or from Welfare and Institutions Code section 1620 because it is a school, but rather, it may not be subject to such requirements because it does not provide the kind of care and supervision covered by the act. However, where a school also provides such care and supervision, it is subject to the jurisdiction of the department because of those services not because it is a school.

Indeed, section 1528, subdivision (a) provides in part, "Licensing reviews, pursuant to sections 1534 and 1535, of care and services of a day care facility for children shall be limited to health and safety considerations and *shall not include any reviews of the content of any educational or training program of the facility.*"

This provision suggests that the Legislature was fully cognizant of the fact that facilities providing education and training might also fall

[9]In an opinion issued in 1963 relating to the licensing of boarding schools, the Attorney General reviewed and reaffirmed the earlier opinions. (42 Ops.Cal.Atty.Gen. 1.)

within the licensing provisions of the Act because of the services provided to the children.

The one case wherein a California appellate court has considered licensing provisions similar to those here involved is *Stoeckle v. Director of Dept. etc. Welfare* (1950) 97 Cal.App.2d 700 [218 P.2d 615]. In that case plaintiff sued to restrain the department from enforcing the licensing provisions of former Welfare and Institutions Code section 1620, subdivision (a) (see *ante*, pp. 257-258). Plaintiff alleged that her institution was a kindergarten and hence not within the act. The trial court found that it was a "day nursery" and subject to the licensing provisions of the act. The Court of Appeal affirmed stating, "There being no definition of a day nursery in the code it is fair to assume that the Legislature intended some pre-public school institution 'receiving or caring for' children of pre-public school age. The institution conducted by appellant accepts children who are of pre-kindergarten age. There is no reasonable basis upon which it could be said that appellant's school is a kindergarten and nothing more. The trial court found that it was a 'day nursery' which sounds like a good name for it. But if the court was in error in giving it that designation the judgment must nevertheless be affirmed because the institution is certainly a home 'for the reception, or care, of children under 16 years of age' under the terms of the statute." (*Id.*, at p. 701.)

The court in *Stoeckle* recognized, as did the Attorney General in the opinion previously cited, that it is immaterial whether the institution is designated a "school" or a "kindergarten," it is the character of the service offered or performed which determines whether the facility comes within the licensing provisions of the act.

We conclude that the fact that a facility is or is not a school is not determinative of the issue whether a facility is subject to the licensing provisions of the Community Care Facilities Act, but rather the question is whether the facility provides the kind of services intended to be regulated by the act.

██ Following extensive administrative hearings, the Department determined that appellants' facilities provide the kind of services described in the act, at least as to some of the children, along with its educational program.

Based upon that determination, which is not challenged in these proceedings, we conclude that the Department had authority to license appellants' facilities as community care facilities.

Kaufman, Acting P. J., and Garst, J.,* concurred.

A petition for a rehearing was denied June 19, 1981, and appellants' petition for a hearing by the Supreme Court was denied August 6, 1981. Bird, C. J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.