[No. B105899. Second Dist., Div. Five. Mar. 22, 1999.]

TRACY GRIMES et al., Plaintiffs and Appellants, v.
STATE DEPARTMENT OF SOCIAL SERVICES et al., Defendants and
Respondents.

## COUNSEL

Western Law Center for Disability Rights, Mark T. Johnson; San Fernando Valley Neighborhood Legal Services, Beth Osthimer, David Pallack; Bryan Cave; and David H. Raizman for Plaintiffs and Appellants.

Daniel E. Lungren, Attorney General, Charlton G. Holland III, Assistant Attorney General, John H. Sanders and James F. Ahern, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**ARMSTRONG, J.**—Tracy Grimes, Gabrielle and Frederick Hanna, Sally Lucas, and the Westside Center for Independent Living, appeal the judgment denying them relief from the licensing requirements of the California Community Care Facilities Act (the Act), Health and Safety Code section 1500 et

seq.[1] Appellants maintain that the Act discriminates against them on account of handicap in violation of the Fair Housing Act, codified as amended by the Fair Housing Amendments Act of 1988 (FHAA) at 42 United States Code section 3601 et seq., the Fair Employment and Housing Act and the California Constitution. Specifically, Grimes and the Hannas contend that the State Department of Social Services (the Department) abused its discretion in refusing their request for an exemption from the Act's licensing requirements. We agree, and reverse the judgment.

## FACTS

Grimes is an adult woman who suffered a brain stem hemorrhage in 1988, leaving her partially paralyzed. She requires a wheelchair for mobility, and needs help in dressing, grooming, meal preparation, and other daily activities. She is mentally alert and understands and participates in conversation and various activities, although her speech, sight and motor abilities were all affected by her brain injury.

Grimes met the Hannas and their three children at church in 1991, when Grimes was residing at Corbin House, a licensed community care facility. Grimes was unhappy in her housing for a variety of reasons, including her inability to use the bathroom on demand and facility rules which made it difficult for her to participate in her church activities. The Hannas regularly visited Grimes at Corbin House, took her on outings, and facilitated her participation in church and social activities. Grimes and the Hannas developed a close, loving bond.

In October 1993, the Hannas invited Grimes to move into their rented home. Gabrielle Hanna agreed to help Grimes in her daily activities, and to become her provider under the In-Home Supportive Services (IHSS) Program. (See Welf. & Inst. Code, § 12300 et seq.) Grimes and her mother also agreed to pay her Social Security income to the Hannas to contribute to her room and board.

The Department was alerted to Grimes's presence in the Hanna home, and in March 1994, sent a licensing analyst to investigate. The Department cited the Hanna home as an unlicensed care facility within the meaning of the Act. The citation, entitled a "Notice of Operation and Violation of Law—Community Care Facility" or "NOV" indicated that a $200 penalty could be assessed for each day that Grimes lived in the Hannas' unlicensed home. Because the licensing requirements would mandate substantial remodeling of their rented house, the Hannas determined that obtaining a license would

---

[1]Further statutory references are to the Health and Safety Code unless otherwise indicated.

not be feasible. Grimes and the Hannas filed a written request to exempt their home from the licensing requirements of the Act based on the close, family-like relationship that existed between them; the Department denied the exemption request.[2] Consequently, Grimes left the Hanna home and moved to a far more expensive facility than she could afford, which was not well suited to her needs.

After filing this lawsuit, Grimes sought a preliminary injunction to permit her to move back into the Hannas' home. That injunction was granted, based on the court's determination that it was likely that plaintiffs would prevail at trial in establishing that their home was not a community care facility within the meaning of the Act, and that the legislative intent of Welfare and Institutions Code sections 12300 and 12301.6, former subdivision (g) is to permit a person with a disability to remain in the home of her own choosing, cared for by the provider of her choice. Thus, Grimes again resided with the Hannas from October 1994 until the time of trial. At the conclusion of the trial, which denied Grimes the relief she sought, the preliminary injunction was dissolved. Consequently, Grimes again moved out of the Hanna home.[3]

Sally Lucas is an adult woman who was diagnosed with multiple sclerosis in 1981. She began using a wheelchair for ambulation in 1994. She lives in a rental apartment in Santa Monica and is assisted in her daily tasks such as cooking, grooming and bathing by George French, her friend since 1979, who is also her IHSS provider. In 1993, in need of new housing, Lucas considered moving in with French, but was advised that she would have legal problems if she did so. Specifically, she was advised by the Westside Center for Independent Living (WCIL) that there could be legal repercussions if she shared housing with her IHSS provider.

The WCIL is a nonprofit organization providing advocacy and assistance to persons with disabilities so that they can live independently in the community. Among other things, WCIL provides housing services to persons with disabilities by assisting them in obtaining affordable, accessible housing.

---

[2] In its opening statement to the trial court, the Department explained the reason for its denial as follows: "[The Department] insisted upon a relationship involving marriage or blood or adoption because it is confirmable, it is verifiable, it is objective, and it's legal. It's something that they can look to and say there is a document that shows marriage or adoption or a blood relationship here. Without that kind of certainty, the defendants are exposing themselves to making a determination based on no criteria as to what a close loving relationship is."

[3] Due to the fact that Grimes moved out of the Hannas' home solely because the Hannas were no longer afforded the protection of the preliminary injunction, any suggestion that the case is moot because Grimes no longer lives with the Hannas is meritless.

### 1. Standing

■ Initially, respondent challenges the standing of the Hannas, Lucas and WCIL to challenge the regulations. The FHAA makes clear that residential providers, such as the Hannas, have standing to challenge the state laws and regulations which discriminate against them "because of a handicap" of the "person residing in or intending to reside" in their home. (42 U.S.C. § 3604(f)(2); see also *Horizon House* v. *Township of Upper Southampton* (E.D.Pa. 1992) 804 F.Supp. 683, 692, affd. (1993) 995 F.2d 217; *Baxter* v. *City of Belleville, Ill.* (S.D.Ill. 1989) 720 F.Supp. 720, 730-731.) The NOV was issued to the Hannas, who were forced to change their chosen living arrangements so as to avoid incurring a $200 per day penalty. The Hannas have standing to sue.

Lucas is similarly situated to Grimes, in that she testified that she would live with her friend and IHSS provider in his home, but for the Department's position that that arrangement would subject her IHSS provider to the same penalties assessed against the Hannas. However, unlike Grimes, Lucas did not apply for an exemption to the regulations. Consequently, she cannot complain that the Department abused its discretion in denying her request.

Finally, we agree with the Department that WCIL has no standing to challenge the Act and the regulations promulgated thereunder, as it is neither a housing provider nor a disabled person subject to the Act and regulations.

### 2. The Act and its regulations

■ The Act, enacted by the California Legislature in 1973, reflects "a legislative determination that there is an urgent need for a coordinated and comprehensive statewide service system of quality community care for the mentally ill, developmentally and physically disabled, and children and adults who require care and services." (*Montessori Schoolhouse of Orange County, Inc.* v. *Department of Social Services* (1981) 120 Cal.App.3d 248, 254 [175 Cal.Rptr. 14].) Moreover, "[t]he provisions of Health and Safety Code section 1500 et seq. are remedial in purpose. The law seeks to protect persons who cannot protect themselves from unscrupulous and negligent providers of services where such providers are not otherwise subject to regulation." (*Id.* at p. 255.) A license is required to operate a community care facility[4] unless exempt from licensure pursuant to California Code of Regulations, title 22, section 80007. (§§ 1508, 1505.)

---

[4]The licensing process includes the submission of a verified application (Cal. Code Regs., tit. 22, § 80018, subd. (a)); attendance at an orientation (Cal. Code Regs., tit. 22, § 80018, subd. (b)); payment of an application processing fee (Cal. Code Regs., tit. 22, § 80018, subd.

Under the Act, a community care facility is defined as "any facility, place, or building which is maintained and operated to provide nonmedical residential care, day treatment, adult day care, or foster family agency services for children, adults, or children and adults, including, but not limited to, the physically handicapped, mentally impaired, incompetent persons, and abused or neglected children, . . ." (§ 1502.)

Although this statutory scheme at first blush appears to be limited in its coverage to commercially operated facilities that are "maintained and operated to provide nonmedical residential care" (§ 1502, subd. (a)), other provisions of the Act, the regulations promulgated by the Department, and the policies and practices of the Department apply the statutory licensing requirements to much broader circumstances, such as are presented in the case before us, where a mentally competent, physically disabled adult chooses to live with a family not related to her by blood, marriage or adoption.

The primary source of the expansive coverage of the Act derives from the definition of an "unlicensed community care facility" found in section 1503.5. This definition includes within its scope any unlicensed residence that provides "care or supervision" or that accepts residents who demonstrate a need for "care or supervision" as defined in the regulations. (§ 1503.5, subd. (a)(1)-(3).) The term "care or supervision" in turn is similarly broadly defined to include any one or more of a wide array of assistive activities that might be provided or for which a need is demonstrated. (Cal. Code Regs., tit. 22, § 80001, subd. (c)(2).) Included in this list is assistance with dressing, grooming, bathing, other personal hygiene, taking or storing medications, dental and medical care, and monitoring special diets. Thus, people who need assistance with any of these activities automatically make their residences subject to the licensing requirement, unless they live in their own home or the home of a relative, or unless they meet one of the other narrow exemptions from licensing not applicable here. (§ 1505; Cal. Code Regs., tit. 22, § 80007.)

Both the statute and the regulations make clear that it is not the provision of care and supervision to a disabled person which triggers the licensing requirement. Rather, it is the fact that the disabled person is in need of care

(d)(18)); fingerprinting and criminal record clearance (Cal. Code Regs., tit. 22, § 80019); submission of a detailed plan of operation (Cal. Code Regs., tit. 22, § 80022); fire clearance by a city or county fire department (Cal. Code Regs., tit. 22, § 80020); submission of proof of water supply clearance by a governmental health department or commercial laboratory (Cal. Code Regs., tit. 22, § 80021); and preparation of a disaster and mass casualty plan (Cal. Code Regs., tit. 22, § 80023). An unlicensed community care facility is subject to criminal prosecution and civil penalties of $200 per day. (Cal. Code Regs., tit. 22, §§ 80006, 80056.)

and supervision, regardless of whether the need is being met by the housing provider or an outside provider (such as an IHSS provider), or indeed, whether the need is being met at all. Thus, a private residence is considered an unlicensed community care facility, and its household subject to criminal prosecution and civil penalties, even if it is providing "board and room only, or room only, or board only" to a person who "requires any element of care" (§ 1505, subd. (h)) or " 'demonstrate[s] the need for care or supervision' " (Cal. Code Regs., tit. 22, § 80001, subd. (u)(2)(D); see also *Jenron Corp.* v. *Department of Social Services* (1997) 54 Cal.App.4th 1429, 1435 [63 Cal.Rptr.2d 508] [For a facility to be an "unlicensed community care facility" it "need only accept or retain residents who require care and supervision; it need not provide such." (Italics omitted.)].)[5]

### 3. *Similar facility exemption*

■ As noted above, Grimes and the Hannas applied to the Department for an exemption from the licensing requirements of the Act. The basis for their exemption was the close, family-like relationship enjoyed by Grimes and the Hannas, which would entitle them to an exemption under section 1505, subdivision (k) if they were "relatives." Thus, Grimes and the Hannas requested that the director exercise his discretion and exempt their living arrangements from licensure pursuant to section 1505, subdivision (p), which provides that the Act shall not apply to "Any similar facility determined by the director."

The Department's response to the exemption request reflects a lack of understanding of the discretion that it was called upon to exercise. The Department correctly summarized the request as follows: "You described the situation as one where a legally competent adult with disabilities chooses to live in a loving family environment which provides rented housing and IHSS services to the legally competent adult and that legally competent adult only. You analogized the circumstances to living in one's own home or with a blood relative." The Department stated: "The individual is not, in fact, living with blood relatives. Nor is this living arrangement considered to be the home of the individual for licensing purposes." The Department then concluded: "Mr. and Mrs. Hanna provided classic care and supervision, which is what the department licenses and regulates. Their situation is not significantly different from those of others where we have required licensure in the past." The Department therefore refused to grant the exemption.

■ It is axiomatic that "an administrative agency has only such authority as has been conferred on it." (*Association for Retarded Citizens* v. *Department of Developmental Services* (1985) 38 Cal.3d 384, 391-392 [211

---

[5]For this reason, the Department's eleventh hour argument that this matter is moot because Grimes and the Hannas ceased to be subject to the Act once an outside IHSS provider began tending to Grimes lacks merit.

Cal.Rptr. 758, 696 P.2d 150] (*ARC*).) "To be valid, . . . administrative action must be within the scope of authority conferred by the enabling statute." (*Id.* at p. 391.) Thus, although there is a long tradition of substantial deference granted to the reasonable actions of administrative agencies (*Morris* v. *Williams* (1967) 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697]), "[w]hatever the force of administrative construction, . . . final responsibility for the interpretation of the law rest with the courts." (*Whitcomb Hotel, Inc.* v. *Cal. Emp. Com.* (1944) 24 Cal.2d 753, 757 [151 P.2d 233, 155 A.L.R. 405].)

Courts have interpreted these established rules of judicial review of administrative action to find an abuse of discretion where: (1) "the administrative action under attack has, in effect, 'alter[ed] or amend[ed] the statute or enlarge[d] or impair[ed] its scope'" (*ARC, supra,* 38 Cal.3d at p. 391, quoting *Morris* v. *Williams, supra,* 67 Cal.2d at p. 748); (2) there is a failure to exercise discretion (*Betancourt* v. *Workmen's Comp. App. Bd.* (1971) 16 Cal.App.3d 408, 413 [94 Cal.Rptr. 9]; *In re Faucette* (1967) 253 Cal.App.2d 338, 342 [61 Cal.Rptr. 97]); or (3) an administrative agency has "engage[d] in unjustified, unreasonable delay in the implementation of statutory commands." (*California Trout, Inc.* v. *Superior Court* (1990) 218 Cal.App.3d 187, 203 [266 Cal.Rptr. 788].)

██ The Act explicitly recognizes that family members who care for physically disabled relatives do not fall within the purview of the Act. (§ 1505, subd. (k).) The question put to the Department by the exemption request was whether a mentally competent, physically disabled adult who chooses to live in the home of friends, rather than relatives, presents a situation requiring the protection of the state as contemplated by the Act. The Department contended, and the trial court agreed, that the difficulty of ascertaining the existence of a close family-like relationship in the absence of a "verifiable" relationship such as blood, marriage or adoption justified denying the exemption request. It should be noted, however, that the Legislature has mandated the Department to undertake this precise exercise in enforcing legislation regarding residential care for the elderly (§ 1569 et seq.) and residential care for the chronically ill (§ 1568.01 et seq.). Under these laws, licensure is not required if the housing and "care and supervision" are provided by a "close friend" or a "significant other" (§§ 1568.03, subd. (c)(3) and 1569.145, subd. (f)(2); see also Cal. Code Regs., tit. 22, § 87801, subds. (c)(5) and (s)(3) [defining, respectively, "close friend" and "significant other"]). Thus, we fail to discern how this supposed difficulty alone can justify denial of an exemption request in a situation such as presented by Grimes and the Hannas.

In short, we conclude that the Department abused its discretion by failing to consider whether Grimes's decision to live in the Hanna home presented

a situation requiring the protection of the state as contemplated by the Act. Consequently, the trial court erred when it affirmed the Department's decision denying Grimes's and the Hannas' request for an exemption from licensing. On remand, the Department must exercise its discretion so as to give meaning to the Legislature's direction in section 1505, subdivision (p), and to be consistent with the mandates of the Act, the fair housing laws, and California privacy laws.

## DISPOSITION

The appeal as to Lucas and the WCIL is dismissed for lack of standing. The judgment as to Grimes and the Hannas is reversed. The matter is remanded to the trial court for further proceedings consistent with the views expressed herein. Appellants are to recover their costs on appeal.

Grignon, Acting P. J., and Godoy Perez, J., concurred.

A petition for a rehearing was denied April 12, 1999.