[L.A. No. 31662. July 14, 1983.]

MICHAEL J. MIDDLETON et al., Plaintiffs and Appellants, v. IMPERIAL INSURANCE COMPANY, Defendant and Respondent; WESLEY J. KINDER, as Insurance Commissioner, etc., et al., Real Parties in Interest and Respondents.

## COUNSEL

Harding & Zilinskas, Yager, Voorhis, Harding & Zilinskas, Neil S. Tardiff and James M. Duenow for Plaintiffs and Appellants.

Voegelin & Barton, Robert M. Rudnicki, Harney & Moore, David M. Harney, James J. Pagliuso, Horvitz & Greines, Irving Greines, Leonard Sacks, Victoria J. De Goff, Roberta Ritter, Robert E. Cartwright, Wylie A. Aitken, Harlan Arnold, Glen T. Bashore, Ray Bourhis, Richard D. Bridgman, Edwin Train Caldwell, David S. Casey, Jr., J. Nick De Meo, Harry J. Delizonna, Douglas K. deVries, Paul A. Eisler, Allan F. Grossman, Sanford M. Gage, Ian Herzog, Dana Hobart, Stanley K. Jacobs, Harvey R. Levine, John C. McCarthy, Timothy W. Peach, Joseph Posner, John M. Van Dyke, Arne Werchick and Stephen I. Zetterberg as Amici Curiae on behalf of Plaintiffs and Appellants.

No appearance for Defendant and Respondent.

George Deukmejian and John K. Van de Kamp, Attorneys General, Edmond B. Mamer, Deputy Attorney General, Clausen, Harris & Campbell, Lon Harris and Marie D. Clause for Real Parties in Interest and Respondents.

**OPINION**

**KAUS, J.**—Appellants Michael J. Middleton, M.D., an anesthesiologist, and William J. Bowland, R.N.A., a nurse-anesthetist, were insured by Imperial Insurance Company (Imperial) for malpractice liability from January 1, 1971, through January 1, 1973. Their policies covered "occurrences" (alleged malpractice) during the policy period, regardless of how many years later a claim was actually made. Insurance argot, for obvious reasons, describes such policies as having a "long tail."

Imperial later became insolvent; on January 10, 1978, the state Insurance Commissioner (Commissioner) was appointed liquidator of its assets. Pursuant to statutory requirement he published notice that claims against Imperial must be filed within six months—by July 21, 1978. (Ins. Code, §§ 1021, subd. (a), 1063.7.)[1] The Commissioner also mailed individual notices to all persons who were insured under Imperial professional liability policies issued on or after January 1, 1974. No notice was sent to appellants, and they did not file claims during the six-month period.

On June 30, 1980, almost two years after expiration of the time for filing claims in the liquidation proceeding, appellants were notified of malpractice claims against them for services rendered in September 1971, a time covered by their Imperial policies. On July 10, 1980, they submitted claims to the Commissioner and to the California Insurance Guarantee Association (CIGA). The Commissioner refused to accept the claims, and CIGA rejected the claims made against it.[2] Appellants then petitioned the superior court for an order allowing them to file their claims. (§ 1032.)[3] The petition was denied.

This appeal followed. Appellants contend the superior court should have ruled in their favor because: (1) The Commissioner was required by statute to give them written notice of the time for filing claims and that his failure to do so estops him from asserting the time limit; (2) the court has statutory or inherent authority to permit the filing of late claims; (3) the Commissioner's failure to give them written notice constituted a violation of the due process and equal protection clauses of the state and federal Constitutions.

---

[1] Unless otherwise noted, all statutory references are to the Insurance Code.

[2] The filing of a timely claim in the insolvency proceeding is a prerequisite to obtaining relief from CIGA. (See § 1063.1, subd. (c)(1)(iii).)

[3] Section 1032 provides: "When a claim is rejected by the commissioner, written notice of rejection shall be given by mail, addressed to the claimant at the address set forth in his claim. Within 30 days after the mailing of the notice the claimant may apply to the court in which the liquidation proceeding is pending for an order to show cause why the claim should not be allowed."

We conclude that appellants are entitled to relief on the basis of their first contention and therefore find it unnecessary to address the merits of their other claims for relief.

Before proceeding to the merits of appellants' contention, we describe briefly CIGA's role in the insolvency proceeding. CIGA was created by statute in 1969 as a compulsory insolvency insurer. (§§ 1063-1063.14.) Most state-regulated insurance companies are required to be members of CIGA. (§ 1063, subd. (a).) Its purpose is to provide insurance against loss arising from the failure of an insolvent insurer to discharge its obligations under its insurance policies. (See *California Union Ins. Co.* v. *Central National Ins. Co.* (1981) 117 Cal.App.3d 729, 734 [173 Cal.Rptr. 35]; Barger, *California Insurance Guarantee Association* (1970) 45 State Bar J. 475, 482.) When an insurer becomes insolvent CIGA obtains funds for payment of "covered claims"—a word of art—by assessing its membership in proportion to the individual member's premium volume of a given class of insurance. (§§ 1063.1, subd. (c), 1063.5.)

Policyholders of an insolvent company may elect to proceed through CIGA. When they do so, they assign their claims against the estate of the insolvent insurer to CIGA. (§ 1063.4.) CIGA is then a creditor of the insolvent insurer and, as such, must file a timely claim in the insolvency proceeding. (§§ 1021, 1025.5.) This claim, like the claims of policyholders and other creditors, enables CIGA to share in the assets of the insolvent company on final distribution. (§ 1033.) Pending such distribution, CIGA uses the funds obtained through member assessments to fulfill the insolvent insurer's obligations insofar as they constitute covered claims under the statute. (§§ 1063.2, 1063.5.) After payment of all covered claims and incidental expenses, CIGA may refund to its members all remaining assessment levy moneys and dividends received from the liquidator. (§ 1063.5.)

The statutes governing liquidation proceedings require only published notice (§ 1021 et seq.), but the CIGA legislation (§ 1063 et seq.) requires the liquidator—here the Commissioner—to give notice by prepaid first class mail to: "(a) all persons known or reasonably expected to have or be interested in claims *against the insurer, at the last known address within this state; (b) all insureds of the insurer, at the last known address within this state,* accompanied by a notice of the date of termination of insurance . . . ." (§ 1063.7.) In addition to providing information about the liquidation, the written notice must provide a brief description of the nature and function of CIGA. Such notice must also be given by publication. (*Ibid.*)

The written notice sent to holders of Imperial professional liability policies issued on or after January 1, 1974, advised them "to file claims *even*

*if they knew of none,* because of the 'long tail' effect of claims under professional negligence policies written on an occurrence basis, i.e., where coverage was provided for liability from negligent acts performed during the policy period, even though no discovery occurred and, hence, no cause of action arose until a much later date."[4] (Italics added.) These claims are referred to by the parties as "hypothetical" or "contingent" claims.[5]

■ Appellants contend that the Commissioner should have given them notice under section 1063.7, which, as noted, required written notice to "(a) all persons known or reasonably expected to have or be interested in claims against the insurer" and to "(b) all insureds of the insurer." They maintain that they fall within both categories.

Since appellants' policies covered acts of malpractice committed during the policy period regardless of when a claim might be made, they assert that they are "insureds" as that term is defined in sections 22 and 23.[6] Appellants define an insured as anyone to whom the insurer still owes a duty of coverage under the terms of the policy.

Respondents, Commissioner and CIGA, on the other hand, contend that the term "insureds" in section 1063.7 can only mean present policyholders, since the statutory notice to insureds is to be "accompanied by a notice of the date of termination of insurance." (§ 1063.7, subd. (b).) Cancellation notices, however, are not mandatory. CIGA may elect to continue coverage until normal policy expiration. (See § 1063.2, subds. (e), (f).) Since cancellation is discretionary, it is clear that the direction to include a notice of termination does not necessarily indicate an intent to limit "insureds" to holders of unexpired policies.

In any event, even if appellants are not "insureds" within the meaning of section 1063.7, subdivision (b), they were still entitled to written notice under subdivision (a) as "persons known or reasonably expected to have or be interested in claims against the insurer." Appellants dispute the reason-

---

[4]This quotation is from a paraphrase in the clerk's transcript of the advice that was given in the individual written notices. The record does not contain a copy of the actual notices that were sent.

The published notice (as distinguished from the individual letters), which the record does contain, did not provide any advice about filing "contingent" claims to preserve the "long tail" effect of coverage under the professional liability policies.

[5]The Commissioner concedes that insofar as the insolvency proceeding is concerned, appellants would have been protected if they had filed such "contingent" claims within the six-month period.

[6]Section 22 provides: "Insurance is a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event."

Section 23 provides: "The person who undertakes to indemnify another by insurance is the insurer, and the person indemnified is the insured."

ableness of the Commissioner's decision to exclude pre-1974 policyholders from notice by mail. Supposedly, that decision was justified in large part by the fact that the statute of limitations on medical malpractice was four years (Code Civ. Proc., § 340.5), but, as appellants correctly assert, the four-year period is not a reasonable cut-off date, since the statute of limitations can be extended or tolled for various reasons.[7] (See, e.g., *Brown* v. *Bleiberg* (1982) 32 Cal.3d 426, 432-433 [186 Cal.Rptr. 228, 651 P.2d 815].) Moreover, even an outlawed claim has to be defended. The duty to furnish such a defense—one of the obligations of the insolvent insurer—is assumed by CIGA under the express provisions of subdivision (a) of section 1063.2.[8] In sum, holders of pre-1974 "occurrence" policies could still be sued for acts committed during the policy period and accordingly could reasonably be expected to have an interest in filing a "contingent" claim.

We therefore conclude that appellants should have been given notice as insureds as well as "persons known or reasonably expected to have or be interested in claims against the insurer." They paid for policies protecting them against actions, whenever brought, if the alleged malpractice was committed during the policy period. That is what a "long tail" is all about, as was explicitly recognized in the notices the Commissioner did send out. (See fn. 4, *ante*.) The insurer's later insolvency would be a matter of great import to insureds such as appellants, and they would have an obvious interest in taking all necessary steps to avail themselves of the protection provided by CIGA.[9] Accordingly, we hold that the Commissioner's failure to comply with his statutory duty to give appellants written notice estops him from asserting the six-month time period for filing claims.[10] (See *Hart-*

---

[7]Before its amendment in 1975, Code of Civil Procedure section 340.5 provided a four-year outside limit from the date of the injury. The limit could be tolled, however, for such reasons as the failure of the physician to disclose his act of malpractice or the plaintiff's minority. (Code Civ. Proc., §§ 340.5, 352.)

The 1975 amendments to section 340.5 shortened the outside limit to three years and provided that it could be tolled (1) upon proof of fraud, (2) for intentional concealment, or (3) for the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the injured person. It further provided for tolling for minors under the age of six and for any time during which the parents and insurers have committed fraud or collusion in failing to bring an action on behalf of the minor.

[8]"The association shall . . . pay for or furnish . . . defenses of claimants when required by policy provisions . . . ." (§ 1063.2, subd. (a).)

[9]We recognize that the effect of our holding is to require written notice to all persons who ever had "occurrence" policies with an insurer who becomes insolvent, but we are not persuaded that this is an intolerable burden. The insurer should have records of all of its "occurrence" policyholders since the "long tail" effect of such policies obligates it to provide coverage at any time in the future for claims based upon the insured's conduct during the policy period.

[10]*Kinder* v. *Pacific Public Carriers Co-op, Inc.* (1980) 105 Cal.App.3d 657 [164 Cal. Rptr. 567] and *Carpenter* v. *Eureka Casualty Co.* (1936) 14 Cal.App.2d 533 [58 P.2d 682], are relied upon by the Commissioner and CIGA as holding that the superior court is precluded from allowing the filing of late claims under any purported statutory or inherent

*way* v. *State Board of Control* (1976) 69 Cal.App.3d 502 [137 Cal.Rptr. 199]; *Lucas* v. *Board of Trustees* (1971) 18 Cal.App.3d 988 [96 Cal. Rptr. 431]; *Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297 [61 Cal. Rptr. 661, 431 P.2d 245].)

The order denying the petition to file appellants' claims is reversed.

Bird, C. J., Mosk, J., Richardson, J., Broussard, J., Reynoso, J., and Grodin, J., concurred.

---

authority. These cases did not involve defective notice and thus are inapposite to the theory upon which appellants are entitled to relief.