[Civ. No. 26181. Fourth Dist., Div. One. Oct. 14, 1983.]

KENNETH CORY, as State Controller, Plaintiff and Respondent, v. POWAY UNIFIED SCHOOL DISTRICT, Defendant and Appellant.

## COUNSEL

Brown & Conradi, Gerald A. Conradi, Clifford D. Weiler and Sharon H. Seay for Defendant and Appellant.

George Deukmejian, Attorney General, Richard D. Martland, Chief Assistant Attorney General, and Janelle B. Davis, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**BUTLER, J.—**

*Summary*

Poway Unified School District (School District) classified beginning teachers on a salary schedule that failed to take into account years of training and experience as mandated by state law. In earlier proceedings, the court ordered the School District to reclassify affected beginning teachers consistent with state law and to pay them retroactive salary. The School District complied and then increased its revenue limit to recover the salary payments. The Controller disallowed the increase, and the court granted his petition for a writ of mandate requiring the School District to reduce the revenue limit. The School District appeals. We affirm.

*The Background Proceedings*

Review of earlier proceedings is necessary. Under applicable law and regulations, the School District is required to establish policies with respect

to the salaries payable to its certificated employees. In 1974, the School District revised the salary policy for beginning teachers. The revised policy provided: "Upon initial employment, all beginning teachers will be placed on salary class 'A' even though the employee may have sufficient units of study to qualify for a higher class placement." At that time, Education Code section 13506, enacted in 1959 and amended in 1969 (now § 45028 of the reorganized Education Code operative Apr. 30, 1977),[1] provided in part: "Effective July 1, 1970, each person employed by a district in a position requiring certification qualifications except a person employed in a position requiring administrative or supervisory credentials, shall be classified on the salary schedule on the basis of uniform allowance for years of training and years of experience. . . .

"In no case shall the governing board of a school district draw orders for the salary of any teacher in violation of this section, nor shall any superintendent draw any requisition for the salary of any teacher in violation thereof." The California Teachers Association, the Poway Faculty Association (Associations) on behalf of all affected teachers and Charlotte T. Leamy filed a petition for a peremptory writ of mandate against the School District on December 3, 1976, in the San Diego Superior Court. The Associations are organizations whose memberships consist of certificated public school employees. Leamy was a member of the Associations and was a certificated employee of the School District. She began employment after the revised salary policy went into effect. She was paid under salary class "A," although she had a master's degree in education. At the time of her employment, the School District placed certificated employees with less training than Leamy in class "A" and also placed certificated employees with training equal to Leamy's in a higher class with more pay.

The answer to the petition admitted all material allegations. The trial court concluded Leamy and the other teachers were not classified for salary purposes on the basis of uniform allowance for years of training and years of experience as required by former section 13506. A peremptory writ of mandate issued requiring the School District (1) to set aside its revised salary policy and to cause Leamy and other certificated employees similarly situated to be placed in a classification commensurate with their years of training and experience retroactive to the date of initial placement, and (2) to pay damages to Leamy and such other certificated employees measured by the difference in salary they received and that to which they should have been entitled retroactive to the date of initial placement.

The judgment was entered on August 1, 1977. On September 15, the School District noticed its appeal from the judgment.

---

[1]All statutory references are to the Education Code unless otherwise specified.

*The Settlement*

The following year, the Supreme Court decided *Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650 [147 Cal.Rptr. 359, 580 P.2d 1155]. That case was adverse to the School District's position. Negotiations for settlement were then undertaken resulting in a stipulation for settlement filed with the court on April 2, 1979. The settlement provided for payment to each affected teacher of 85 percent of the salary differential to which the teacher would have been entitled had the placement been consistent with education and years of experience. Any problems with respect to salary computations were to be resolved within a year.

On the same day the stipulation was filed, April 2, the trial court made its order approving settlement: "The terms of the settlement set forth in said stipulation are approved. Respondent may dismiss the Appeal and file an amended return to the Peremptory Writ indicating payment pursuant to said settlement." Again, on April 2, the trial court signed another order authorizing the plaintiffs to dismiss the complaint without prejudice. We augmented the record on appeal and find the complaint was not and has not been dismissed.

We judicially notice our records. The appeal was perfected. The record and all briefs were filed by June 29, 1978. The parties stipulated to abandon the appeal and the issuance of a remittitur. We dismissed the appeal (Cal. Rules of Court, rule 19(b)) and issued the remittitur the same day, April 17, 1979. On June 22, 1979, an amended return to the writ was filed by the School District reciting all matters at issue had been settled and all of the affected teachers had been paid.

*The Present Proceedings*

The School District paid the affected teachers a total of $390,818.81 and on August 14, 1979, increased its revenue limit by that amount. The revenue limit functions in the amount of money a school district can collect annually for its general education programs from local taxes and state aid under various provisions of the Education Code dealing with taxation by school districts. The county and State Departments of Education disallowed the increase. The Controller (§ 42243.6 as then effective) authorized his discretionary review, disallowed the revenue limit increase, the School District disagreed with the disallowance, and the Controller sought a writ of mandate against the School District to cause the revenue limit to be reduced by $390,818.81. The trial court granted the writ, and this appeal followed.

*The Issues*

Section 42243.6 as effective for the fiscal year 1979-1980, the year in and for which the School District sought to increase its revenue limit, provided: "The revenue limit of a school district, as determined under Section 42238, may be increased by the amount necessary to pay costs mandated by the courts, as defined in Section 2205 of the Revenue and Taxation Code, pursuant to final court orders issued after January 1, 1978, . . .

"The Controller may audit any revenue limit increase under this section and any data related to the establishment thereof. If the Controller determines that such limit exceeds a limit which would be necessary to meet the federally mandated, initiative-mandated, or court-mandated costs, or if the Controller determines that such limit has been increased to pay any cost mandated by a court which has resulted from litigation entered into in order to avoid the revenue limits established by this chapter, or if the Controller determines that a school district has erroneously concluded that it is subject to costs mandated by the courts or costs mandated by the federal government, the Controller shall immediately notify the governing board of the school district of such determination, and the school district shall reduce its revenue limit by an appropriate amount for the next succeeding fiscal year. In the event that a school district fails to make such a reduction in its revenue limit, the Controller shall request the Attorney General to bring an action under Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure to force a reduction in the limit."[2] Under section 2205 of the Revenue and Taxation Code, costs mandated by the courts means: " . . . any increased costs incurred by a local agency or school district in order to comply with a final court order issued after January 1, 1973, . . ." Section 2205 as it read in 1979-1980 goes on: "Costs mandated by the courts do not include (i) costs incurred as a result of a judgment in an eminent domain or condemnation proceeding, or (ii) costs incurred in order to comply with a final court order mandating the specific performance, or awarding damages as a result of non-performance, of any contract or agreement entered into after January 1, 1973."

These issues emerge for resolution:

---

[2] Section 42243.6 was amended by an urgency measure signed by the Governor on June 30, 1980 (Stats. 1980, ch. 288) mandating Controller review but effective for 1980-1981 fiscal year and fiscal years thereafter. The School District acquiesced in the assumption by the Controller of jurisdiction to review and disallow the revenue limit increase for 1979-1980. The section was again amended (Stats. 1981, ch. 100) to eliminate increases in revenue limits by amounts necessary to pay court costs and to provide instead for requests for and reimbursement of such amount, all subject to the same requirements as for revenue limit increases.

1. Is there a final court order?

2. If so, was the final court order issued after January 1, 1978?

3. If so, did the final court order involve costs incurred (a) to compel the specific performance, or (b) award damages as a result of nonperformance of an agreement?

### The Final Court Order

The peremptory writ issued on August 1, 1977, was stayed pending the appeal filed September 15, 1977. The appeal was dismissed and remittitur issued on April 17, 1979. ■ A judgment does not become final so long as the action in which it is entered remains pending and an action remains pending until final determination on appeal. (*Pacific Gas & Elec. Co.* v. *Nakano* (1939) 12 Cal.2d 711, 714 [87 P.2d 700, 121 A.L.R. 417]; *Rich* v. *Siegel* (1970) 7 Cal.App.3d 465, 469 [86 Cal.Rptr. 665]; *In re Pine* (1977) 66 Cal.App.3d 593, 595 [136 Cal.Rptr. 718]; Code Civ. Proc., § 1049.) ■ Where an appeal has been taken, a judgment is final upon the issuance of the remittitur. (*Hoover* v. *Galbraith* (1972) 7 Cal.3d 519, 526 [102 Cal.Rptr. 733, 498 P.2d 981]; *Turner* v. *Donovan* (1942) 52 Cal.App.2d 236, 240 [126 P.2d 187].)

The School District contends the April 2, 1978, order approving the settlement is the final court order contemplated by section 42243.6. At the time that order was made, the trial court was without jurisdiction. ■ Perfecting the appeal divested the trial court of all jurisdiction to deal further with the appealed judgment except as to collateral or independent matters not involved in the appeal. (*Hollaway* v. *Scripps Memorial Hospital* (1980) 111 Cal.App.3d 719, 723 [168 Cal.Rptr. 782].)

■ The final order contemplated by section 42243.6 is the August 1, 1977, judgment which became final on April 17, 1978, upon issuance of the remittitur. That judgment ordered the School District to set aside its salary policy, reclassify affected teachers and "pay as incidental damages to Petitioner, CHARLOTTE M. LEAMY, and all other certificated employees similarly situated, as hereinbefore defined, the difference in salary between the respective classifications, retroactive to the date of initial placement, plus interest at the rate of 7% per annum . . . ." The School District thus incurred increased costs to comply with a final court order issued after January 1, 1978. The amended return to the writ filed by the School District on June 20, 1978, recited compliance with the judgment and payment in full to the teachers.

## Exclusion of Costs

■ Section 2205 of the Revenue and Taxation Code excludes costs in computation of the revenue limit incurred to comply with a final court order mandating the specific performance, or awarding damages as the result of nonperformance of a contract or agreement entered after January 1, 1973. In computing the School District's revenue limit for 1979, the Controller excluded the cost of retroactive salaries paid by the School District pursuant to the court's order. The Controller has taken the position the contracts between the teachers and the School District require the teachers be employed at a salary rate commensurate with years of training and experience under former section 13506 (now § 45028); the judgment in effect specifically enforced the contracts and awarded damages for nonperformance; the resultant costs are thus excluded from costs mandated by the court as defined in Revenue and Taxation Code section 2205 (as of 1979-1980) and may not act to increase the revenue limit under section 42243.6.

In support of his position, the Controller argues allowing the requested increase in the School District's revenue limit by the amount of money paid to the affected teachers leads to absurd results. He claims this is so because any school district may simply disregard the mandate of former section 13506 and, when sued by its teachers, claim increased revenue limits based on the resulting court costs ordering compliance with the statute. This is said to lead to an absurd result as errant school districts which disobey statutory mandates would benefit from increased revenue limits while those which comply with the law would operate at a disadvantage.[3]

---

[3]To assist our understanding of the Controller's absurdity argument, supplemental briefs were filed by the parties in response to our questions on computation of the revenue limit and consequences had the School District at all times classified teachers as required under section 42243.6. The School District brief attaches the 1974, 1975 and 1976 edition of the Annual Report of Financial Transactions of the school districts of San Diego County which reflect the tax rates for those years. The Controller has answered the School District's supplemental brief and makes no objection to our review of the reports. We receive them under California Rules of Court, rule 23.

The School District increased its revenue limit in 1979 by $390,818.81. The state will be required to increase state aid to the School District in that amount for the years 1979-1980. This result follows because of the tax level limits imposed upon school districts through the revenue limit concept, Proposition 13 (Jarvis-Gann initiative, art. XIII A eff. July 1, 1979, except for § 3, eff. June 6, 1979) and relevant provisions of the Education Code and Revenue and Taxation Code. (*Serrano* v. *Priest* (1976) 18 Cal.3d 728 [135 Cal.Rptr. 345, 557 P.2d 929] (*Serrano II*); *Serrano* v. *Priest* (1971) 5 Cal.3d 584 [96 Cal.Rptr. 601, 487 P.2d 1241] (*Serrano I*); Stats. 1977, chs. 36, 894, 1135; Goldfinger, Revenue and Revenue Limits: A Guide to School Finance in California (1982 ed.).)

Reading the supplemental briefs, it appears had the School District followed state law, its budget for 1974 would have been decreased in other areas to meet salary requirements. This is so because in that year the School District local tax rate was at the maximum level. For 1975 and 1976, the rate was less than the maximum and an increase to the ceiling would have generated local tax income sufficient to meet state-mandated salary requirements. It

The School District, on the other hand, argues the Controller's attempt to transmute the writ proceeding into an action for specific performance and money damages ignores well established legal principles. The School District draws technical distinctions between mandamus and contract actions. It contends the underlying writ petition did not request specific performance or allege nonperformance of any contract, but instead sought to set aside the School District's salary policy and, incidentally, recover back pay.

■ While the usual remedy for an employer's failure to pay wages owing to an employee is an action for breach of contract, mandamus is appropriate where payment to a public employee requires the taking of certain preliminary steps by a public official. (*Glendale City Employees Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328, 343 [124 Cal.Rptr. 513, 540 P.2d 609].) In such instances, the public employee must (1) request the issuance of a writ of mandate compelling action by the official and (2) assert the claim for back pay as an item of damages incidental to the writ. (*Campbell* v. *Graham-Armstrong* (1973) 9 Cal.3d 482, 486 [107 Cal.Rptr. 777, 509 P.2d 689].) These incidental claims for back pay resulting from disputes over the extent of an official's statutory duties are, in effect, claims for money damages. (*Coan* v. *State of California* (1974) 11 Cal.3d 286, 291 [113 Cal.Rptr. 187, 520 P.2d 1003].) In recognition of this fact, the scope of mandamus has been expanded to include any claim which is incidental to duty sought to be enforced. (*Tevis* v. *City & County of San Francisco* (1954) 43 Cal.2d 190, 199 [272 P.2d 757].) ■ As stated by the court in *Ross* v. *Board of Education* (1912) 18 Cal.App. 222 [122 P. 967]: "[*M*]*andamus* will be denied only when the party seeking relief has a plain remedy at law which is not only speedy but adequate in the sense that in and of itself it is capable of directly affording and enforcing the relief sought; and if it be found that the remedy at law, although it could and might result in a judgment for plaintiff, is nevertheless inherently incapable of compelling the performance of the specific act which forms the subject matter of an application in *mandamus,* it cannot be said that the remedy at law is equally convenient, beneficial and effective to the extent that it will supersede the remedy by *mandamus.*" (*Id.,* at p. 225.)

■ The distinction drawn by the School District between breach of contract and mandamus is simply not controlling in this case. The terms of the public employment contracts between the affected teachers and the School District include, by reference, all board rules and regulations, resolutions and statutes. (See *A.B.C. Federation of Teachers* v. *A.B.C. Unified Sch. Dist.* (1977) 75 Cal.App.3d 332 [142 Cal.Rptr. 111]; *American Fed-*

---

appears the failure to reduce the budget in 1974 and to increase the tax rates for 1975 and 1976 will result in the payment by the state of $390,818.81. Taxpayers in the errant school district are thusly benefited and the state school fund suffers a detriment.

*eration of Teachers* v. *Oakland Unified Sch. Dist.* (1967) 251 Cal.App.2d 91 [59 Cal.Rptr. 85].) The teachers' petition for writ of mandate alleged, inter alia, the institution of School District's salary policy constituted "a breach of each affected teacher's contract of employment . . . ." Based on this allegation, the teachers prayed for incidental damages representing "the difference in salary between the respective classifications, retroactive to the date of initial placement, . . ." The requested relief was granted by the court; the School District was ordered to pay all incidental damages arising from the reclassification of the affected teachers, including back pay.

■   In applying the relevant statutes to these facts, we are mindful of our duty to achieve a result that is reasonable and comports with the apparent purpose and intent of the Legislature. (*County of Alameda* v. *Kuchel* (1948) 32 Cal.2d 193, 199 [195 P.2d 17].)   ■   Where uncertainty exists, consideration should be given to the consequences flowing from a particular interpretation. The apparent purpose of the legislation will not be sacrificed to a literal construction. (*Ivens* v. *Simon* (1963) 212 Cal.App.2d 177 [27 Cal.Rptr. 801].) A practical construction is preferred to one that is technical and is required when the latter would lead to mischief or absurdity. (*Jersey Maid Milk Products Co.* v. *Brock* (1939) 13 Cal.2d 620, 648 [91 P.2d 577].)   ■   Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.*, *supra*, 21 Cal.3d at 659 [147 Cal.Rptr. 359, 580 P.2d 1155].)

■   The court's order, forcing the School District to comply with a statute which was incorporated into the affected teachers' contracts and awarding all "incidental damages" (i.e., back pay) resulting from the School District's failure to comply with the law, mandates "the specific performance, or awarding of damages as a result of nonperformance," of those contracts. To hold otherwise would work a result which is contrary to the statutory scheme of revenue limits, Proposition 13 local tax rate limitations and supplemental state aid to education enacted by the Legislature in response to the Supreme Court's decisions in *Serrano I* and *Serrano II*. The state school fund does not contemplate the bailout of a transgressor to the detriment of those school districts which comply with the law. Virtue should have some reward.

The School District suggests it should not be punished for adopting a salary policy which violates state law solely as a result of "changing California Supreme Court interpretations [of Ed. Code, § 45028], *e.g.*, *Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified School District*, *supra*." As we earlier noted, the holding in *Palos Verdes* was the result of

a 1969 amendment effective July 1, 1970, to section 13506 (now § 45028) enacted in 1969, including language requiring school districts employing teachers to classify them on the salary schedule ". . . on the basis of uniform allowance for years of training and years of experience. Employees shall not be placed in different classifications on the schedule, nor paid different salaries solely on the basis of the respective grade levels in which such employees serve." In addition, the Legislature provided a statement of its intent (at § 3 of the amending act): "It is the intent of the Legislature in amending Section 13506 of the Education Code as provided in Section 1 of this act to establish a *uniform base salary schedule* in each school district." (Italics added.)

This statutory amendment is hardly a mere change in the judicial interpretation of existing law. As the court noted in *Palos Verdes*: "It is our view—in light of the express terms of the 1969 amendment to section 13506, the express statement of intention found in the operative legislation, and the decisional background above referred to—that a clear indication of legislative intent emerges. . . . [The statute] speaks directly to the matter, and in so doing imposes a *mandatory requirement* [italics added] not only that such classification be made, but also that it shall proceed *on the basis of* [original italics] a uniform training-experience allowance. Thus, *as of its effective date* [italics added] the new statute provides 'each person employed by a district in a position requiring certification qualifications . . . *shall be classified* [original italics] on the salary schedule *on the basis of* [original italics] uniform allowance for years of training and years of experience.' The intent of the Legislature in making this change, as expressed in section 3 of the operative legislation, is 'to establish a uniform base salary schedule in each school district.' (*Id.*, at p. 660.)

In this case, the School District had over four years to recognize the significance of these changes in section 45028. The adoption of a salary policy in direct contradiction to the clear legislative intent embodied in the amendment resulted in litigation with the School District's teachers and in the assessment of damages based upon the court-ordered retroactive reclassification of those teachers. The costs of that litigation fall squarely within the exclusion provided in Revenue and Taxation Code section 2205 and, as such, may not be passed on to the taxpayers of this state.

Judgment affirmed.

Brown (Gerald), P. J., and Wiener, J., concurred.