[No. B009064. Second Dist., Div. Seven. May 15, 1986.]

BRUCE BUNNER, as Insurance Commissioner, etc.,
Plaintiff and Appellant, v.
IMPERIAL INSURANCE COMPANY, Defendant and Respondent;
RONALD J. ROONEY, Claimant and Respondent;
CALIFORNIA INSURANCE GUARANTEE ASSOCIATION,
Real Party in Interest and Appellant.

**COUNSEL**

John K. Van de Kamp, Attorney General, Edmond B. Mamer and Marla K. Markman, Deputy Attorneys General, for Plaintiff and Appellant.

Clausen, Harris & Campbell, Marie D. Clause and Gregory P. Orland for Real Party in Interest and Appellant.

Greenberg, Glusker, Fields, Claman & Machtinger and Robert S. Chapman for Claimant and Respondent.

No appearance for Defendant and Respondent.

**OPINION**

**THOMPSON, J.**—This is an appeal from an order of the superior court requiring appellants Insurance Commissioner of the State of California (Commissioner) and California Insurance Guarantee Association (CIGA) to allow respondent, Dr. Ronald J. Rooney, to file a late claim with the Commissioner against the estate of Rooney's insolvent insurer, Imperial Insurance Company (Imperial). The trial court allowed the late claim to be filed because the notice of the insolvency and claims filing period mailed to Rooney by the Commissioner to the address shown on Rooney's policy was never received due to Rooney's change of address. Appellants contend that the filing of the late claim should not have been allowed because (1) the Commissioner complied with statutory (Ins. Code, § 1063.7) and due process notice requirements by mailing the notice to Rooney's last known address; and (2) the superior court lacked jurisdiction to extend the six-month statutory claims filing period. We shall conclude that receipt of notice is required under Insurance Code, section 1063.7, that the trial court's finding that notice was not received is supported by substantial evidence, and that the superior court had jurisdiction to extend the claims filing period. We affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

Rooney, an orthopedic surgeon, was insured by Imperial for malpractice liability from June 8, 1974, to June 8, 1975, and from June 20, 1975, to

December 29, 1975. (For ease of reference, these policies are referred to in the singular.) This policy covered occurrences of alleged malpractice during the policy period, regardless of how many years later a claim was actually made (occurrence policy).

Imperial became insolvent and the Commissioner was appointed liquidator of its assets on January 10, 1978. Pursuant to Insurance Code section 1021, subdivision (a),[1] and section 1063.7,[2] the Commissioner published notice that claims against Imperial in the insolvency proceeding must be filed within six months, by July 21, 1978. The Commissioner also mailed individual notices to all persons who were insured under Imperial professional liability policies issued on or after January 1, 1974.

In particular, on February 23, 1978, the Commissioner mailed notice to Rooney at the address shown on his policy, the only address for Rooney known to the Commissioner. However, Rooney never received the notice, having moved to a new address within the same county sometime in February 1977. The Commissioner was unaware of Rooney's lack of receipt of notice because the notice was not returned as undeliverable. Rooney was not required by his policy to advise Imperial of address changes.

On October 12, 1978, after the six-month period had expired, Rooney learned of a possible malpractice claim against him for services rendered to Bryan Crowder during the time covered by the Imperial policy. Rooney notified CIGA of this potential claim on October 12, 1978.

Crowder filed a malpractice lawsuit against Rooney on September 10, 1980. Two years later, Rooney filed a claim with the Commissioner on September 29, 1982. The Commissioner rejected Rooney's claim on No-

---

[1] Unless otherwise noted, all section references hereafter are to the Insurance Code.

Section 1021, subdivision (a), provides: "(a) Upon the making of an order to liquidate the business of such person, the commissioner shall cause to be published notice to its policyholders, creditors, shareholders, and all other persons interested in its assets. Such notice shall require claimants to file their claims with the commissioner, together with proper proofs thereof, within six months after the date of first publication of such notice, in the manner specified in this article."

[2] Section 1063.7 states: "When a liquidator, domiciliary or ancillary, is appointed in this state for any member insurer, the liquidator shall promptly give notice of his appointment and a brief description of the contents of this article and of the nature and functions of the association by prepaid first-class mail, to: (a) all persons known or reasonably expected to have or be interested in claims against the insurer, at the last known address within this state; (b) all insureds of the insurer, at the last known address within this state, accompanied by a notice of the date of termination of insurance; and (c) the board of governors of the association. . . . The liquidator shall also promptly publish such notice in a newspaper of general circulation in the county where the insurer had its principal office in this state not less than once per week, for four weeks, and by publication elsewhere in this state as the court shall direct."

vember 3, 1982, because the last date to file a claim against Imperial's estate was July 21, 1978.[3]

Thereafter, Rooney entered into a stipulated judgment with Crowder, and then petitioned the superior court for an order allowing him to file the claim (§ 1032),[4] arguing that the notice mailed by the Commissioner in February 1978 was defective because it was incorrectly addressed. Rooney argued that the Commissioner could have easily discovered his new address through telephone company listings for the same county as the address shown on his policy, and through medical licensing and other professional association listings.

The trial court granted the petition, and issued a minute order stating: "[W]here an insured had an occurrence policy which contains no requirement on the part of the insured to keep the insurer apprised of a current address in the event of the insolvency of the insurer, when the insured has no actual notice of the insolvency or of the claims filing period, notice to an old address shown on the policy and publication of the notice is inadequate when the current address is reasonably ascertainable. Under such circumstances the California liquidator of the insolvent insurer has a duty to ascertain the current address of the insured and to mail or deliver notice to that address."

This appeal followed.

## II

### ROONEY DID NOT RECEIVE NOTICE OF THE INSOLVENCY AND CLAIMS FILING PERIOD AS REQUIRED BY SECTION 1063.7

". . . . CIGA was created by statute in 1969 as a compulsory insolvency insurer. (§§ 1063-1063.14.) Most state-regulated insurance companies are required to be members of CIGA. (§ 1063, subd. (a).) Its purpose is to provide insurance against loss arising from the failure of an insolvent insurer to discharge its obligations under its insurance policies. (See *California Union Ins. Co.* v. *Central National Ins. Co.* (1981) 117 Cal.App.3d 729, 734 [173 Cal.Rptr. 35]; Barger, *California Insurance Guarantee Association*

---

[3]The filing of a timely claim in the insolvency proceeding is a prerequisite to obtaining relief from CIGA (§ 1063.1, subd. (c)(1)(iii)).

[4]Section 1032 provides: "When a claim is rejected by the commissioner, written notice of rejection shall be given by mail, addressed to the claimant at the address set forth in his claim. Within thirty days after the mailing of the notice the claimant may apply to the court in which the liquidation proceeding is pending for an order to show cause why the claim should not be allowed."

(1970) 45 State Bar J. 475, 482.) When an insurer becomes insolvent CIGA obtains funds for payment of 'covered claims'—a word of art—by assessing its membership in proportion to the individual member's premium volume of a given class of insurance. (§§ 1063.1, subd. (c), 1063.5.)

"Policyholders of an insolvent company may elect to proceed through CIGA. When they do so, they assign their claims against the estate of the insolvent insurer to CIGA. (§ 1063.4.) CIGA is then a creditor of the insolvent insurer and, as such, must file a timely claim in the insolvency proceeding. (§§ 1021, 1025.5.) This claim, like the claims of policyholders and other creditors, enables CIGA to share in the assets of the insolvent company on final distribution. (§ 1033.) Pending such distribution, CIGA uses the funds obtained through member assessments to fulfill the insolvent insurer's obligations insofar as they constitute covered claims under the statute. (§§ 1063.2, 1063.5.) After payment of all covered claims and incidental expenses, CIGA may refund to its members all remaining assessment levy moneys and dividends received from the liquidator. (§ 1063.5.)" (*Middleton* v. *Imperial Ins. Co.* (1983) 34 Cal.3d 134, 137 [193 Cal.Rptr. 144, 666 P.2d 1].)

■ The primary objective of CIGA is to provide insurance against "loss arising from the failure of an insolvent insurer to discharge its obligations under its insurance policies." (§ 119.5; *Middleton* v. *Imperial Ins. Co., supra,* 34 Cal.3d at p. 137; *Central National Ins. Co.* v. *California Ins. Guarantee Assn.* (1985) 165 Cal.App.3d 453, 458 [211 Cal.Rptr. 435].) The legislative intent was to create a protection for the public against insolvent insurers when no secondary insurer is available. (*Ibid.*) Thus, "[i]n our view CIGA was created for the protection of the public." (*Ross* v. *Canadian Indemnity Ins. Co.* (1983) 142 Cal.App.3d 396, 404 [191 Cal.Rptr. 99].)

Although the statutes governing liquidation proceedings require only published notice (§ 1021 et seq.), the CIGA legislation requires the liquidator, here the Commissioner, to give notice of the liquidation and the claims filing period by prepaid first class mail to: "(a) all persons known or reasonably expected to have or be interested in claims against the insurer, at the last known address within this state; (b) all insureds of the insurer, at the last known address within this state, accompanied by a notice of the date of termination of insurance . . . ." (§ 1063.7.) "In addition to providing information about the liquidation, the written notice must provide a brief description of the nature and function of CIGA. Such notice must also be given by publication. [§ 1063.7.]" (*Middleton* v. *Imperial Ins. Co., supra,* 34 Cal.3d at p. 137.)

In *Middleton,* a case arising from the same insolvency herein, the Supreme Court held that the Commissioner must give notice of insolvency and the claims filing period to Imperial's insureds who, like Rooney, held occurrence liability policies. (34 Cal.3d at p. 139.) Thus the Commissioner was statutorily required to send a notice to Rooney by prepaid first class mail to his "last known address within this state." (§ 1063.7.)

The Commissioner and CIGA argue that the Commissioner's compliance with section 1063.7's notice requirements is established by the fact that the notice was mailed to Rooney's "last known address"—the address shown on Rooney's policy. They argue that whether notice was actually received is immaterial. Rooney, however, argues that the Commissioner did not fully comply with section 1063.7 in that Rooney never received notice, despite the fact that his current address was readily ascertainable through a variety of sources, including telephone company, medical licensing and other professional association listings.

Generally, "[w]hen statutory language is thus clear and unambiguous there is no need for construction, and courts should not indulge in it." (*Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].) But the plain meaning of a statute has been disregarded when the plain meaning "would have inevitably resulted in 'absurd consequences' or frustrated the 'manifest purposes' of the legislation as a whole." (*People* v. *Boyd* (1979) 24 Cal.3d 285, 294 [155 Cal.Rptr. 367, 594 P.2d 484].) A remedial or protective statute should be liberally construed to promote the underlying public policy (*Hooper* v. *Deukmejian* (1981) 122 Cal.App.3d 987, 1003 [176 Cal.Rptr. 569]; *Montessori Schoolhouse of Orange County, Inc.* v. *Department of Social Services* (1981) 120 Cal.App.3d 248, 256 [175 Cal.Rptr. 14]); the same liberality is not extended to those who seek to use penalties of a remedial statute as a sword rather than a shield (*Fitch* v. *Pacific Fid. Life Ins. Co.* (1975) 54 Cal.App.3d 140, 148 [126 Cal.Rptr. 445]). "'"The mere literal construction of a section in a statute ought not to prevail if it is opposed to the intention of the legislature apparent by the statute; and if the words are sufficiently flexible to admit of some other construction it is to be adopted to effectuate that intention. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." (*In re Haines* (1925) 195 Cal. 605, 613 [234 P. 883].)'" (*Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 259 [104 Cal.Rptr. 761, 502 P.2d 1049]; *Cory* v. *Poway Unified School Dist.* (1983) 147 Cal.App.3d 1158, 1169 [195 Cal.Rptr. 586].)

Evidence Code, sections 630 and 641 create the rebuttable presumption that a "letter correctly addressed and properly mailed" was "re-

ceived in the ordinary course of mail" (§ 641). This rebuttable presumption "require[s] the trier of fact to assume the existence of the presumed fact unless and until evidence is introduced which would support a finding of its nonexistence, in which case the trier of fact shall determine the existence or nonexistence of the presumed fact from the evidence and without regard to the presumption." (Evid. Code, § 604.) However, nothing in section 604 "shall be construed to prevent the drawing of any inference that may be appropriate." (*Ibid.*; see *Taylor* v. *State Bar* (1974) 11 Cal.3d 424, 433 [113 Cal.Rptr. 478, 521 P.2d 470].)

The Legislature, had it intended to do so, could have added language to the CIGA legislation clearly stating that proof of mailing of notice of the insolvency and the claims filing period at the named insured's last known address shall be sufficient proof of notice under section 1063.7. By way of contrast, the Legislature added just such language to the legislation enacted one year prior to the CIGA legislation (§ 664), concerning cancellation or failure to renew automobile liability, physical damage or collision policies. Section 664 explicitly states: "Proof of mailing of notice of cancellation, or of intention not to renew or of reasons for cancellation, to the named insured at the address shown in the policy or to the named insured's last known address, shall be sufficient proof of notice." The fact that similar language was not enacted in the CIGA legislation indicates different intentions existed with respect to the degrees of proof required to establish compliance with the notice requirements under the two pieces of legislation. ■ " ' "Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed." ' " (*People* v. *Valentine* (1946) 28 Cal.2d 121, 142 [169 P.2d 1].)" (*People* v. *Drake* (1977) 19 Cal.3d 749, 755 [139 Cal.Rptr. 720, 566 P.2d 622].)

■ The narrow construction of section 1063.7 urged by the Commissioner and CIGA would frustrate the very purpose of the CIGA legislation to protect the public against insolvent insurers. In particular, the protection intended for an innocent policy holder is lost under the Commissioner's and CIGA's interpretation where, as in this instance, the notice mailed by the Commissioner is not received. ■ While the construction of a statute by the officials charged with its administration is entitled to great weight, " ' " 'whatever the force of administrative construction . . . final responsibility for the interpretation of the law rests with the courts.' " ' [Citations.]" (*Sanchez* v. *Unemployment Ins. Appeals Bd.* (1977) 20 Cal.3d 55, 67 [141 Cal.Rptr. 146, 569 P.2d 740].) ■ We decline to base our decision herein on the sole factor urged by the Commissioner and CIGA that the address where Rooney's notice was mailed was "the last known address" contained in Imperial's records.

We therefore conclude that proof of mere compliance with the terms of section 1063.7—part of a protective statute that must be liberally construed and which significantly does not contain language creating a conclusive presumption of compliance with section 1063.7 by mere proof of mailing to the insured's last known address—creates only a rebuttable presumption that notice was received. Where the insured is able to satisfactorily demonstrate to the trier of fact that such notice was not received, the appellate court cannot disturb such a factual finding if supported by substantial evidence in the record. As the Supreme Court aptly stated in *Grade* v. *County of Mariposa* (1901) 132 Cal. 75, 76 [64 P. 117]: "While section 1963 of the Code of Civil Procedure declares the presumption to be 'that a letter duly directed and mailed was received in the regular course of the mail,' still, that presumption is one of fact, and not conclusive, but disputable. When the statement was forwarded, as indicated by the finding, a *prima facie* case of compliance with the law was made out. But it was only *prima facie,* and was completely overthrown by the evidence of the assessor, to the effect that he never received it. Plaintiff's acts, coupled with the presumption of fact declared by the law, in the absence of other evidence, would justify a finding in their favor. But here the court cannot indulge in the presumption that the statement was received, for the finding is directly to the contrary." (See also, *Taylor* v. *State Bar, supra,* 11 Cal.3d at p. 433; *In re Cavenaugh* (1965) 234 Cal.App.2d 316, 320 [44 Cal.Rptr. 422].)

In this case, evidence was introduced through Rooney's testimony to rebut the presumed fact of receipt of notice. According to our review of the record and of the trial court's findings, we conclude that the substantial evidence does exist to support the finding that notice was not received through no fault of Rooney's, but solely due to the Commissioner's failure to ascertain Rooney's current address, which was readily ascertainable.

The Commissioner and CIGA argue that an affirmance of the trial court's ruling would effectively require the Commissioner to mail notices to the addresses found in the insolvent insurer's records and then double check the accuracy of those addresses for all insureds who fail to file a claim within the statutory period. It is contended that such an administrative burden clearly exceeds the plain meaning of section 1063.7. However, the record fails to support the unsubstantiated claim of the Commissioner's counsel made during oral argument here and in the trial court that 12,000 notices were mailed and only 2,000 claims were filed.

In view of the fact that notice was not received pursuant to section 1063.7, we turn to the remaining issue of the superior court's jurisdiction to extend the claims filing period.

## III

### The Superior Court's Jurisdiction Was Properly Exercised

■ Appellants raise the identical jurisdictional argument that was rejected by the Supreme Court in *Middleton* v. *Imperial Ins. Co., supra,* 34 Cal.3d at pages 139-140, footnote 10. There the court stated: "*Kinder* v. *Pacific Public Carriers Co-op, Inc.* (1980) 105 Cal.App.3d 657 [164 Cal.Rptr. 567] and *Carpenter* v. *Eureka Casualty Co.* (1936) 14 Cal.App.2d 533 [58 P.2d 682], are relied upon by the Commissioner and CIGA as holding that the superior court is precluded from allowing the filing of late claims under any purported statutory or inherent authority. These cases did not involve defective notice and thus are inapposite to the theory upon which appellants are entitled to relief." We therefore conclude that the Commissioner's and CIGA's reliance on *Kinder* and *Carpenter* herein is likewise misplaced, in view of our finding that the notice to Rooney was defective.

### Disposition

The judgment is affirmed.

Lillie, P. J., and Johnson, J., concurred.

Petitions for a rehearing were denied June 5, 1986, and the petitions of plaintiff and appellant and real party in interest and appellant for review by the Supreme Court were denied August 14, 1986. Lucas, J., did not participate therein.