[No. B213373. Second Dist., Div. Eight. Aug. 30, 2010.]

HCM HEALTHCARE, INC., et al., Plaintiffs and Appellants, v.
CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, Defendant
and Respondent.

1318

## COUNSEL

Millard, Holweger, Child & Marton and Bradford T. Child for Plaintiffs and Appellants.

Black, Compean, Hall & Eli, Frederick G. Hall and Vicente Valencia, Jr., for Defendant and Respondent.

## OPINION

**RUBIN, J.**—HCM Healthcare, Inc., and Madera Convalescent Hospital, Inc., appeal from the judgment for California Insurance Guarantee Association rejecting their claim for insurance coverage. We affirm.

### FACTS AND PROCEEDINGS

Appellants HCM Healthcare, Inc., and Madera Convalescent Hospital, Inc., operate residential nursing homes. Between 1997 and 2001, three insurance companies issued nursing home liability policies to appellants. American International Specialty Lines Insurance Company (AISLIC) issued a policy covering 1997 to 1998; Pacific Insurance Company Limited (Pacific) issued policies covering 1998 to 2000; and Legion Insurance Company (Legion) issued a policy covering 2000 to 2001.

In July 2003, the State of Pennsylvania, the domiciliary state for Legion, declared Legion insolvent and placed it into liquidation. Pennsylvania's liquidation order imposed a June 30, 2005 deadline for policyholders to file claims against Legion. The order stated: "All claims against the estate of Legion, together with proper proof thereof, shall be filed on or before June 30, 2005. No person shall participate in any distribution of the assets of Legion unless his, her or its claim has been filed with the Liquidator in accordance with the time limit established by the Liquidator, subject to the provisions for the late filing of claims pursuant to Section 537 of Article V,

40 P.S. § 221.37." (Tit. 40 of Pa. Cons. Stat. § 221.37, which we discuss below, permits late filing of a claim for "good cause" as defined by that statute.)

In October 2003, Legion's liquidator mailed to appellants notice of Legion's insolvency and a proof of claim form. The form stated appellants had until June 30, 2005, to file claims against Legion.

In April 2005, the family of Lupe Barela, a former resident of one of appellants' nursing homes, sued appellants and others for elder abuse that Barela allegedly suffered at appellants' facility. Because Barela was a resident during years covered by the AISLIC, Pacific, and Legion policies, appellants tendered Barela's claim to AISLIC and Pacific and demanded coverage under their policies. Additionally, appellants notified respondent California Insurance Guarantee Association (CIGA) on October 20, 2005, of appellants' demand for coverage under Legion's policy. More than two months later on December 23, 2005, appellants signed and later submitted to Legion's Pennsylvania liquidator a proof of claim for the Barela suit. The insurers denied coverage. In August 2006, appellants settled the Barela lawsuit for $250,000.

In November 2005, the family of Carl Fulsom, another former resident of one of appellants' nursing homes, sued appellants and others for elder abuse, alleging Fulsom suffered personal injuries while living at appellants' facility. On November 21, 2005, appellants notified CIGA of the Fulsom lawsuit. And on February 6, 2006, appellants signed and later submitted to Legion's liquidator a proof of claim for the Fulsom suit. The insurers denied coverage. In January 2006, appellants settled the Fulsom lawsuit for $250,000.

In December 2006, appellants sued AISLIC, Pacific, and CIGA for breach of contract and for violating the Insurance Code. Appellants alleged the insurers wrongfully refused to provide appellants with defense counsel and indemnification for the Fulsom and Barela lawsuits. In settlement of appellants' lawsuit, Pacific and AISLIC paid appellants $400,000.

CIGA did not settle. Instead, it pressed as an affirmative defense the Insurance Code's statutory bar to CIGA's paying anything other than "covered claims." CIGA noted Insurance Code section 1063.1 limited a covered claim to, among other things, a claim timely filed with CIGA by "the last date fixed for the filing of claims" in the Pennsylvania liquidation proceeding. Insurance Code section 1063.1, subdivision (c)(1)(C) states: " 'Covered claims' means the obligations of an insolvent insurer . . . that satisfy all of the following requirements: [¶] . . . [¶] (C) Which are presented as a claim to [CIGA] . . . on or before the last date fixed for the filing of claims in the

domiciliary liquidating proceedings." The Pennsylvania liquidation order set June 30, 2005, as the last day for filing a timely proof of claim in the "domiciliary liquidating proceedings." Appellants' notification to CIGA of the Barela lawsuit in October 2005 and the Fulsom lawsuit in November 2005 did not meet the June deadline, nor, even more plainly, did their later proofs of claim to Legion's liquidator in December 2005 and February 2006.

The court tried CIGA's affirmative defense in a bifurcated bench trial in 2008. Based on appellants' and CIGA's stipulated facts and written arguments, the court found appellants' proofs of claim to Legion's liquidator were untimely. Accordingly, the court found appellants' claims against CIGA for coverage of the Barela and Fulsom lawsuits under Legion's policy were not "covered claims." Accordingly, the court entered judgment for CIGA. This appeal followed.

## DISCUSSION

■ CIGA is a creature of statute. The Legislature created CIGA to provide, under statutorily circumscribed conditions, limited insurance coverage for policyholders who suffer the misfortune of their insurer becoming insolvent. "CIGA is not, and was not created to act as, an ordinary insurance company. . . . It is a statutory entity that depends on the Guarantee Act [(Ins. Code, § 1063 et seq.)] for its existence and for a definition of the scope of its powers, duties, and protections." (*Isaacson v. California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 786 [244 Cal.Rptr. 655, 750 P.2d 297], citation omitted.) "While CIGA's general purpose is to pay the obligations of an insolvent insurer, it is not itself an insurer and 'does not "stand in the shoes" of the insolvent insurer for all purposes.' [Citation.] 'CIGA is *not* in the "business" of insurance . . . CIGA issues no policies, collects no premiums, makes no profits, and assumes no contractual obligations to the insureds.' [Citation.]" (*R. J. Reynolds Co. v. California Ins. Guarantee Assn.* (1991) 235 Cal.App.3d 595, 600 [1 Cal.Rptr.2d 405].) By law, CIGA may pay only "covered claims" and is " ' " 'expressly forbidden' to [pay claims] except where the claim at issue is a 'covered claim.' [Citation.]" ' " (*American Nat. Ins. Co. v. Low* (2000) 84 Cal.App.4th 914, 920 [101 Cal.Rptr.2d 288]; see also Ins. Code, § 1063.12, subd. (a).) As a creature of statute, and not of contract, in some instances CIGA may not be responsible for an insured loss to the same extent as the insolvent insurer might be under the terms of its insurance contract.

■ Pennsylvania's liquidation order imposed a June 30, 2005 deadline for filing claims against Legion's estate. The order stated: "All claims against the estate of Legion, together with proper proof thereof, shall be filed on or before June 30, 2005. No person shall participate in any distribution of the

assets of Legion unless his, her or its claim has been filed with the Liquidator in accordance with the time limit established by the Liquidator, subject to the provisions of the late filing of claims pursuant to Section 537 of Article V, 40 P.S. § 221.37." Because appellants did not meet the June 30 deadline, CIGA may not honor their claims. "The filing of a timely claim in the insolvency proceeding is a prerequisite to obtaining relief from CIGA." (*Middleton v. Imperial Ins. Co.* (1983) 34 Cal.3d 134, 136, fn. 2 [193 Cal.Rptr. 144, 666 P.2d 1] (*Middleton*).) The trial court therefore did not err in entering judgment for CIGA.

Appellants contend their claims in the Pennsylvania proceeding were timely because the June 30 deadline did not apply to them. They note that Pennsylvania allows late filing of a claim for good cause. Title 40 of Pennsylvania Consolidated Statutes, section 221.37, subdivision (b), which the liquidation order identified, states: "For good cause shown, the liquidator may permit a claimant making a late filing to share in distributions, whether past or future, as if he were not late, to the extent that any such payment will not prejudice the orderly administration of the liquidation. Good cause shall include but shall not be limited to the following: [¶] (1) that existence of claim was not known to the claimant and that he filed his claim as promptly thereafter as reasonably possible after learning of it . . . [¶] . . . [¶] (4) that a claim was contingent and became absolute, and was filed as soon as reasonably possible after it became absolute . . . ."

■ Appellants assert Insurance Code section 1063.1, subdivision (c) incorporates Pennsylvania's exceptions for filing a late claim. Appellants cite no authority, however, that Pennsylvania's statute trumps California's requirement that a policyholder file its claim "on or before the last date fixed for the filing of claims in the domiciliary liquidating proceedings."[1] (Ins. Code, § 1063.1, subd. (c)(1)(C).)

Appellants' reliance on *Middleton, supra*, 34 Cal.3d 134 and *Bunner v. Imperial Ins. Co.* (1986) 181 Cal.App.3d 14 [225 Cal.Rptr. 912] (*Bunner*) for waiving the June 30 deadline is misplaced because policyholders in those decisions did not receive notice of the deadline for filing claims. *Middleton* estopped California's insurance commissioner and CIGA from imposing the filing deadline on a policyholder to whom the commissioner had not mailed statutory notice of the deadline. (*Middleton, supra*, at p. 136.) The *Middleton*

---

[1] Indeed, appellants criticize CIGA's adherence to California law. Appellants state: "CIGA cited California authorities [for denying coverage] without referencing that Legion's liquidation is in Pennsylvania, and that Pennsylvania's claim filing statutes are different, and considerably more lenient, than their California counterparts." Appellants' observation of Pennsylvania's leniency implicitly concedes California's relative strictness, a strictness we must honor. (*Romano v. Mercury Ins. Co.* (2005) 128 Cal.App.4th 1333, 1342 [27 Cal.Rptr.3d 784] [statute's plain meaning controls].)

court held, "the Commissioner's failure to comply with his statutory duty to give appellants written notice estops him from asserting the six-month time period for filing claims." (*Id.* at p. 139, fn. omitted.) And *Bunner* permitted a late claim where the insurance commissioner and CIGA had mailed the statutory notice to the policyholder's previous address instead of his current address, "which was readily ascertainable." (*Bunner, supra,* at pp. 18, 22–23.) Unlike in *Middleton* and *Bunner,* Legion's liquidator mailed notice of Legion's liquidation to appellants and used appellants' correct addresses. This is a factual finding that was supported by substantial evidence. (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632 [80 Cal.Rptr.2d 378].)

Appellants argue that as a factual matter *Middleton* and *Bunner* apply to them because they did not receive notice of the June 30, 2005 filing deadline. They rest their contention on the inability of appellants' CEO to recall having received the notice. The court found to the contrary, however, on the undisputed fact that Legion's liquidator mailed the notice of Legion's insolvency and a proof of claim to appellants in October 2003. We are not free to ignore on appeal factual findings based on substantial evidence. (*Californians for Disability Rights v. Mervyn's LLC* (2008) 165 Cal.App.4th 571, 595 [81 Cal.Rptr.3d 144].)

We also observe that sister states that have addressed the precise issue here have persuasively concluded that the fact that a liquidating jurisdiction may as a matter of discretion permit late filings of claims against the liquidated insurer does not extend the filing period for claims against the local guarantor agency. For example, in *Lake Hospital System, Inc. v. Ohio Ins. Guaranty Assn.* (1994) 69 Ohio St.3d 521 [1994 Ohio 330, 634 N.E.2d 611] (*Lake Hospital*), the Ohio Supreme Court considered an Ohio statute similar to California's. There, the Ohio code provided that the guarantor association " 'shall not be liable to pay any claim filed with the association after the final date set by a court for filing claims in the liquidation proceedings of the insolvent insurer.' " (*Lake Hospital,* 634 N.E.2d at p. 613, italics omitted.) The liquidation was taking place in Indiana which, like Pennsylvania in our case, had a procedure by which late filings could be excused. The Ohio Supreme Court held the Indiana procedure was irrelevant to claims filed with the Ohio guarantor association. "Participating in the distribution of an insolvent insurer's assets and submitting a claim with OIGA [the Ohio version of CIGA] are distinct activities governed by different requirements." (*Id.* at p. 614.) The court reasoned that the liquidating agency's decision to allow a late claimant to participate in the proceeds of the liquidation does not

change the Ohio statute requiring claims against the Ohio guarantor to be filed by the time the foreign jurisdiction sets the initial claim deadline. (*Ibid.*)[2]

In an apparent application of "what is good for the goose is good for the gander" to insurance law, in *Satellite Bowl v. Michigan Property & Casualty* (1988) 165 Mich.App. 768 [419 N.W.2d 460], the Michigan appellate court adopted the same rule as Ohio and disregarded Ohio's discretionary late filing of claims procedure. The court affirmed the trial court decision that held "the Ohio statute which allowed the receiver to accept untimely claims for good cause did not change the August 5, 1982, deadline for purposes of Michigan's covered claims statute." (*Id.*, 419 N.W.2d at· p. 462; see also *Alexander v. Industrial Claim Appeals Office* (Colo.App. 2001) 42 P.3d 46, 48 [noted under Colorado statute similar to California's that "courts in other states having insurance guaranty statutes similar to the [Colorado Insurance Guaranty Association] Act have consistently upheld the deadline provisions, even where, as here, the claimant allegedly was unaware of the claim before the deadline in the receivership proceeding"].)

■ We agree with these courts that California reasonably may enforce a different deadline for the processing of claims with CIGA than a liquidating jurisdiction might apply in deciding whether as a matter of equity and discretion to process claims that were not timely filed in the foreign jurisdiction. California has a strong interest in having predictability in this area, unaffected by case-by-case decisions in other states.

Finally, to the extent appellants assert CIGA's position is fundamentally inequitable, especially as to the Fulsom claim which was not made by the Fulsom family until after the Pennsylvania's claim period had expired, appellants comments should be directed to the Legislature which, of course,

---

[2] A treatise on Ohio insurance law describing *Lake Hospital*'s import reveals how closely *Lake Hospital*'s facts parallel those here, particularly the Fulsom matter which was filed against appellants after the deadline had passed for filing claims in the Pennsylvania liquidation: "[W]here a liquidating court has established a specific date as the final date on which creditors would be permitted to file claims against an insurer's estate, the OIGA was not obligated to honor the claim for reimbursement of a hospital's settlement of its liability in a medical malpractice action, even though the hospital was not named as a party defendant in the pending medical malpractice action until nearly a year later, because the language of [the Ohio statute] is mandatory and does not provide for any discretion on the part of the OIGA to entertain claims that have been filed after the final date for filing claims in a liquidation proceeding." (57 Ohio Jur.3d (2010) Insurance, § 163.)

has the power to change the claim deadline statute. And appellants still have the right to continue to seek reimbursement through the Legion liquidation.[3]

## DISPOSITION

The judgment is affirmed. Respondents to recover their costs on appeal.

Bigelow, P. J., and Flier, J., concurred.

On September 28, 2010, the opinion was modified to read as printed above.

---

[3] CIGA also contends that the judgment should be affirmed because appellants had "other insurance." (Ins. Code, § 1063.1, subd. (c)(9)(A).) In light of our holding that the claim was not timely filed, we do not need to address the trial court's alternative basis for the judgment in favor of CIGA.